## OF THE

# Supreme Court of Florida,

### AT

## JANUARY TERM, 1855,

### HELD AT TALLAHASSEE.

---

FREDERICK R. COTTEN, APPELLANT, VS. HALEY T. BLOCKER, AND JAMES D. TRADEWELL, IN HIS OWN RIGHT AND AS ADMINISTRATOR, &C., OF WILLIAM TRADEWELL, DECEASED, APPELLEES.

1. To constitute a trust or Equitable Mortgage, there must be a specific agreement between the parties in interest, and to be affected by it; there must also be a valuable consideration.
2. The case of Philips vs. Hawkins, 1 Florida, R. 362, commented on and explained.
3. A sale of mortgagee's interest under execution does not confer a complete title in personalty, but gives the mortgagee's rights subject to redemption by the mortgagor.
4. Notice to creditors to file their claims does not sustain a bar under the Statute. The Statute should be strictly pursued and its terms complied with.

Appeal from a decree of Leon Circuit Court.

It appears from the record, that Frederick R. Cotten, on the second day of January, 1844, purchased from James

D., and William Tradewell their plantation and slaves, and other property in Leon County, and took from them a conveyance with general warranty. Three of the slaves purchased, viz : Alfred, Lewis and James, had been on the seventh day of April, 1840, mortgaged to the Southern Life Insurance and Trust Company, to secure the sum of $4200. Of this mortgage, Cotten alleges that he had no actual knowledge at the time of the purchase aforesaid, and that the Tradewells represented to him that the slaves so purchased were entirely unencumbered. Subsequently, and on the third day of June, 1850, Cotten ascertaining the existence of the mortgage covering as aforesaid several of the slaves purchased by him, procured by purchase from the Southern Life Insurance and Trust Company, a transfer thereof, together with the bond to secure which it had been given.

It also appears, that on the ninth day of January, 1844, a few days after the sale to Cotten, James D., and William Tradewell had a settlement of their affairs, including the sale to Cotten, by which it was agreed that William Tradewell was still indebted to James D. Tradewell in the sum of two thousand dollars, to which was to be added the sum of one thousand dollars that day advanced, for which two amounts William Tradewell executed his note payable in four equal annual instalments. It was further understood and agreed by the settlement aforesaid, that William Tradewell was " to release the negroes, Alfred, Lewis and "James, sold to Mr. F. R. Cotten, from a mortgage on "them held by the Southern Life Insurance and Trust Com- " pany and is to substitute for them three of his own indi- " vidual negroes, to wit : Moses, Nancy and Charlotte."

It also appears that William Tradewell on the seventh day of April, 1842, mortgaged to James D. Tradewell the

said negroes, Moses, Nancy and Charlotte, with other property, to secure the payment of a bond for the sum of twenty-two thousand dollars, which bond and mortgage were duly recorded in the Clerk's office of said Circuit Court. Neither the original bond nor mortgage was produced at the hearing in the Court' below, but only copies from the records were read.

It also appears that Haley T. Blocker obtained a judgment in Leon Circuit Court, against James D. Tradewell, and caused the execution which issued thereon, to be levied on the said slaves, Moses, Nancy and Charlotte, which had been mortgaged as aforesaid by said William to James D. Tradewell, and the said slaves were accordingly sold on the third day of February, 1851, the proceeds whereof remained in the hands of the Sheriff to abide the result of this proceeding.

Cotten filed his bill, claiming that the agreement between the Tradewells, of the ninth of January, 1844, by which William Tradewell stipulated to substitute three of his own negroes for three sold to Cotten covered by the mortgage to the Southern Life Insurance and Trust Company, constituted a trust in his behalf, which a Court of Equity should enforce—that the mortgage from William Tradewell to James D. Tradewell, if it ever was valid, was no longer in force, as the debt to secure which it was given, had long since been paid, and therefore, that Blocker could not levy his execution against James D. Tradewell as the holder of a subsisting unpaid mortgage covering the property levied on.

Cotten further claimed, that if it should be decreed that the agreement between the Tradewells aforesaid, created no trust or Equitable lien in his favor, then that as the hol-

der of the bond and mortgage given to the Southern Life Insurance and Trust Company, he is a creditor of the estate of William Tradewell, and entitled to the proceeds of the sale of said slaves, or a pro rata share thereof.

The Defendant, Blocker, insisted in his answer, that the mortgage executed by William Tradewell to James D. Tradewell, on the seventh day of April, 1842, is a subsisting mortgage, the debt to secure which it was given or a part thereof, being still due and unpaid ; and that as the condition of the said mortgage had become forfeited he was entitled to levy his execution against James D. Tradewell on the property embraced therein.

Blocker also insisted, that James D. Tradewell was a creditor of the estate of William Tradewell, and that he was entitled to claim in a Court of Equity, the application to the debt due him by James D. Tradewell, of the pro rata share, which James D. Tradewell would be entitled to receive out of the estate of William Tradewell.    He also insists, that Cotten failed to present his claim against the estate of William Tradewell until it was barred by the Statutes of this State.

A witness was examined as to the value of the negroes, Alfred, Lewis and James, and also of Moses, Nancy and Charlotte who testified that the value of the three first named, at the date of the settlement between the Tradewells was about four hundred dollars more than the value of the three last named.

The Court below, dismissed the Bill with costs, and Cotten appealed.

*M. D. Papy* for Appellant.

*D. W. Gwynn and W. Call* for Appellee, Blocker.

BALTZELL, C. J., delivered the opinion of the Court,

William Tradewell and James Tradewell on the second

day of January, 1844, sold to F. R. Cotten their plantation and slaves, and other property, conveying the same with general warranty. A portion of the slaves, consisting of negroes Lewis, Alfred and James, by mortgage, bearing date seventh April, 1840, had been conveyed to the Southern Life Insurance and Trust Company, by Wm. Tradewell to secure payment of the sum of $4200. On the ninth of January, 1844, the Tradewells had a settlement of their affairs and agreed amongst themselves that Wm. Tradewell should " release these negroes from the mort- " gage aforesaid and substitute for them, three of his own " negroes, Moses, Nancy and Charlotte." This agreement was never executed on the part of Tradewell, ᶠnor was the mortgage paid, but Cotten, to save himself, bought the Bank mortgage and took an assignment to himself. Negroes, Moses and others were levied upon at the instance of Haley T. Blocker, a judgment creditor of James Tradewell, and the proceeds of the execution being in the hands of the Sheriff, it was agreed that they should abide the result of a suit instituted by Cotten. He accordingly filed his Bill, setting up the facts aforesaid, and claiming to have an Equitable lien, or mortgage, or trust upon this property, the negroes, Moses, Nancy and Charlotte, b y virtue of the agreement between the Tradewells, made in his favor, or at all events, that his claim as a creditor of Wm. Tradewell by virtue of the assignment of the mortgage aforesaid, be allowed pro rata out of the said fund. After a hearing of the case upon the pleadings and exhibits, the Court dismissed the Bill, and Cotten has appealed to this Court.

We agree in opinion with the Court below that this agreement of Wm. Tradewell, cannot be regarded as a lien or mortgage in favor of Cotten. . It is scarcely more indeed

than the expression of a design on his part to do something. To effect the substitution of property in place of that mortgaged, requires a new mortgage, with the forms and requi sites of a new contract.    In the first place, there must be execution on the part of the mortgagor; in the next place acceptance on the part of the mortgagee.  In addition to this, a release of the property, to be taken from the mortgagee.  To carry out the designs of the parties, Wm. Tradewell should have mortgaged negroes, Moses, Nancy and Charlotte, to the Life Insurance and Trust Company. They should have released the negroes, Alfred, Lewis and James.    By this means the substitution proposed, would have been brought about.    But Wm. Tradewell never moved  in the matter, for anything appearing in the record, and from the testimony of one of the  witnesses,  the Bank with  propriety could not have accepted the proposition as the negroes proposed to be substituted, were not worth as much as the others by four hundred. dollars.    Undoubtedly  the effect of treating it as a mortgage, would be  to  give  the  Bank a double mortgage, or to add three more negroes to its security without any gain on the part of the Tradewells, and without any approval or consent of theirs expressed to the Bank; in other words, without an agreement to that effect, on their part, with the Bank.   These remarks are applicable to the case of Cotten, after his assignment of the Bank mortgage.   By it he stands in no better position than the Bank.    He has its rights and no more.

The question arises yet, whether a trust was created by this agreement in favor of Cotten.    It is  very clear if it had been carried out, as contemplated, it would  have en- ured to his benefit, by releasing negroes he had bought and which were subject to the mortgage  of the  Bank.    And certainly, if such a result can be brought about consistent-

ly with principle, it would be greatly desirable. The difficulty lies in the complexity of the subject, as already explained. The agreement is not with Cotten, and depended for its execution not upon the Tradewells, but upon a third party—the Bank. And it cannot otherwise be regarded than in connection with the Bank. It does not admit or declare an obligation to Cotten, such as would be the effect of declaring a trust for him. If Tradewell had so designed, he would have agreed directly with Cotten, and given to him these negroes as a protection against the Bank mortgage, and authorized him to use them as such, or declared that he held them in trust to indemnify Cotten. But he does nothing of the kind. In a private agreement between himself and brother, not communicated to Cotten, he engages to effect the arrangement himself and using his own time, means and opportunity.

There are several objections to the enforcing the agreement as a trust on the part of Cotten.

1st. He was a stranger to the agreement. It remained with the author of it and was not acted upon to the time of his death, which is a strong circumstance against it. Hill on Trust., 85; 12 Vesey, 39; 2 Mallory, 267.

There was no consideration proceeding from him. It is true there was a warranty in existence, but that was an executed agreement some nine days previous, and there was nothing new to call this agreement into action. The covenant of warranty was a past consideration. A valuable consideration is requisite to put the Court in motion. Hill on Trust., 83. Note. There was nothing distinct and perfect, complete and unequivocal in the agreement, but on the contrary a design incapable of execution, and imperfect. Hill on Trust., 87; 1 Mad., 176; 3 Brown Chy., 12; 8 Sim 324.

8 SUPREME COURT,

Cotten *vs.* Blocker, and J. D., and Wm. Tradewell.—Opinion of Court.

The following principles are given as the result of the authorities in application to voluntary trusts: "A *clear* declaration of trust contained in, or accompanying the deed which passes the legal estate, will create a perfect executed trust, and will be established."

"A clear declaration or direction by a party, that the property shall be held in trust for the object of his surety, though unaccompanied by a deed or other act divesting himself of the legal estate, is an executed trust and will be enforced."

"If a party having the equitable interest of property, execute a formal instrument directing the trustee in whom the legal interest is vested, to hold in trust for a volunteer, and this direction is accepted and acted upon by the trustee, that is an executed trust." Hill on Trustees, 88—9.

The party having failed to declare a trust to Cotten, or to create an interest in his favor, by certain and definite expressions, it is not for the Court to remedy the defect. We have no option left, but to declare the act as the expression of a design, laudable in its character, and which should have been carried into execution, but which is not in the rightful power of the Court to enforce. It is proper to state that we have examined with proper care the authorities submitted to us, but do not find them to sustain the principles contended for.

Whilst Cotten then has not an equitable claim or trust, he is yet a creditor of Wm. Tradewell, by virtue of the assignment of the Bank mortgage, and as having released the incumbrance on the estate purchased from the Tradewells. This he is entitled to, unless indeed he is excluded, by not having filed his claim with the administrator of Tradewell. The evidence on this point is too vague and indefinite to sustain the objection. The advertisement is

not given, nor is the Statute pursued in other respects, as in the case of Laverty vs. Filyaw. To make the objection available, the Statute should be strictly pursued. The bill then should have been retained to adjudicate these rights of Cotten, as a creditor of Wm. Tradewell.

We have now to consider the claim of Blocker. It is based upon a sale under execution of the interest of James Tradewell, as mortgagee of Wm. Tradewell, by deed dated tenth April, 1842, to secure payment of $22,000 in annual instalments of $2,750 each, payable in 1843, '45, '46, '47, '48, '49 and '50. Under the idea that these instalments, or some of them, were unpaid, the mortgagee's right was levied upon, under the ruling of this Court, in the case of Phillips vs. Hawkins, 1 Florida Reports, 362. It has been erroneously supposed, that a sale of the right of a mortgagee under this decision, would vest the complete title in the purchaser, and this misapprehension, has led to the consideration of the decision, as neither founded in law nor supported by the authority of other Courts. In the first place, the ruling does not conflict in the slightest degree with the right of the mortgagor to redeem after the sale. 4 Howard, 101; 8 Johnson, 96; 12 Wendell, 61; 1 Brevard, 286; 9 Porter, 472; 7 Monroe, 384. As to the rule itself, the difficulty is to find an adverse opinion on the part of the English or American Judges. The Supreme Court of the United States, in the case of Kenzie vs. Bronson, say: "according to the long settled rules of law and Equity " in the United States, in all the States whose juris- "prudence has been modelled upon the principles of the " common law, the legal title to the premises in question " vested in the complainant, upon the failure of the mort-

"gagor to comply with the conditions contained in the mort-
" gage, and at law he had a right to sue for and recover
" the land itself." 6 Howard, S. C., 311.

The Supreme Court of Mississippi, say : " the mortgagee
" of personal property, immediately on the non perform-
" ance of the condition, is regarded as absolute owner of
" the property mortgaged." 4 Smde. & Mar., 153.

The Supreme Court of New York say : " a mortgage is
" an immediate sale to the mortgagee, with the privilege of
" the mortgagor to redeem." 3 Cow., 174.

To refer to the numerous adjudications in the States on
the precise question, would swell this opinion to an unrea-
sonable length. In addition to those cited in Phillips vs.
Hawkins, we add the following : 1 Bailey, S Car., 527;
1 McCord's Chy., 489 ; 1 Harper, 275; 9 Porter, 474 ; 5,
Ala. ; 6 Shepley, 357. Commentators and writers of dis-
tinction on the law, concur in the same opinion. Thus: "a
mortgage of personal property is a conditional transfer or
conveyance of the property itself, and if the condition is
not duly performed, the whole title vests absolutely at law
in the mortgagee, exactly as it does in a mortgage of lands."

> 1 Story's Eq. Jur., 372 § 1030.
> Story on Bailments ; 4 Kent 138—9.
> Coote on Mortgages, "
> 2 Hilliard        "      344.

It is proper to say, we have been informed that a differ-
ent practice prevails in the State of Georgia, and it is prob-
able this fact has led to the general misapprehension pre-
vailing on the subject. If the property mortgaged, on the
failure of the mortgagor to perform the condition by paying
the debt due by the very terms of the contract, becomes at
law, the property of the mortgagee, what is there to ex-

empt it from the payment of his debts by execution? The reference to authorities in the case of Phillips vs. Hawkins, shows that this is done elsewhere, in accordance with authority, and we see nothing in our Statutes, or in principle to prevent the operation of the rule here.

We have said that the sale of the interest of James Tradewell as mortgagee, conferred upon the purchaser under the execution, not the absolute right to the property, but his right and interest, as if he had assigned the mortgage himself, instead of having it sold by the Sheriff.— Blocker is then such assignee, and stands in the place of James Tradewell. The mortgagor, Wm. Tradewell, and his representatives have the right of redemption by paying up the amount due. This is the position which Blocker occupies to the property, and the case being in Equity, and all the parties before the Court, it may well ascertain the extent and value of this interest. The mortgage is complained of as fraudulent. Whilst there are circumstances about it, not altogether satisfactory to us, yet we prefer that this matter be ascertained by the Judge below on a new hearing, with the assistance of a jury, if deemed prudent and necessary. The original bond should be produced if to be had. It seems that the bond is very nearly, if not wholly paid; if this be the fact, then Blocker has no rights under his execution, whatever may be his rights as a creditor of Wm. Tradewell.

Whilst then we concur with the Circuit Court as to the Equities of Cotten, under the agreement of Wm. Tradewell, we differ as to the absolute dismissal of the bill. It should, in our opinion, have been retained as a creditor's bill, and be proceeded with accordingly. The decree is, therefore, reversed and set aside with costs, and the cause remanded for further proceedings not inconsistent with this opinion.