OPINION OF THE COURT
Fritz W. Alexander, J.
Are civil service examination questions and answers “finally administered” following their initial use and thus available for inspection and copying by the public under the Freedom of Information Law (Public Officers Law, art 6)? Petitioners, in these two CPLR article 78 proceedings say “Yes”; respondents, S. Michael Nadel, Personnel Direc *332 tor of the City of New York, and Richard Cunningham, the Records Access Officer of the Department of Personnel of the City of New York, say “No”. The question does not appear to have been previously addressed by the courts of this State. Analysis of the issue, however, persuades that the question must be answered in the negative.
In Proceeding No. 1, Feinstein v Nadel (hereinafter Feinstein), petitioners seek an order pursuant to CPLR article 78 directing respondents to permit inspection and copying of the examination questions in Civil Service Examination No. 8079 for attorney trainee conducted on March 23,1979. Additionally, they seek class action status for this proceeding and an award of counsel fees.
In Proceeding No. 2, petitioners, Social Service Employees Union, Local 371, District Council 37, AFSCME, AFL-CIO, et al. (hereinafter SSEU), seek to annul a determination by Richard J. Cunningham, denying their request to inspect and copy “any and all examination questions and materials supplied to candidates taking the staff analyst exam, Exam No. 7011, *** administered to candidates on December 2, 1978.” They also seek to invalidate a September 13, 1978 directive of the personnel director regarding the “test release” policy of the Department of Personnel.
At issue in both proceedings is the alleged arbitrary, capricious and therefore illegal interpretation by the Department of Personnel of the New York State Freedom of Information Law (Public Officers Law, §§ 84-90 [hereinafter FOIL]) and the “test release” policy adopted by the department pursuant to that interpretation. It is argued by the respondents that a decision upholding these challenges not only will impact adversely upon the ability of the New York City Department of Personnel to efficiently and economically administer civil service examinations but upon the New York State Department of Civil Service as well. Because the underlying legal issue is the same in both proceedings, they are consolidated and disposed of jointly.
THE STATUTE
Section 84 of the Public Officers Law provides in pertinent part that: “The legislature hereby finds that a free *333 society is maintained when government is responsive and responsible to the public, and when the public is aware of governmental actions. The more open a government is with its citizenry, the greater the understanding and participation of the public in government. * * * The people’s right to know the process of governmental decision-making and to review the documents and statistics leading to determinations is basic to our society. Access to information should not be thwarted by shrouding it with the cloak of secrecy or confidentiality. The legislature therefore declares that government is the public’s business and that the public, individually and collectively *** should have access to the records of government in accordance with the provisions of this article.”
Section 87 (subd 2, par [h]) of the Public Officers Law provides that: “Each agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof that: * * * (h) are examination questions or answers which are requested prior to the final administration of such questions.” (Emphasis added.) This statute became effective on January 1, 1978 (L 1977, ch 933).
FACTS
It appears that from October, 1970 until October, 1978, the Department of Personnel permitted applicants for employment with the city to take home with them the test booklets containing the written questions administered to them as part of some competitive civil service examinations. These test booklets and final key answers were also made available pursuant to requests under the Freedom of Information Law (FOIL). Not all exam questions were released during this period.
On September 13, 1978, the personnel director approved a recommendation for and adopted a “test release policy” that provided that “for all open competitive and promotion examinations held on or after October 1, 1978, *** examination questions shall be unreleased.”
The adoption of this policy followed a review and evaluation by the Department of Personnel of its policy of releas *334 ing certain civil service examinations. A survey of civil service jurisdictions across the country revealed that not a single one of the 16 that responded[1] permitted candidates to retain copies of the examinations or allowed public access to these records. This review by the department lead to a determination that the benefits to be derived from being able to re-use test questions by not releasing them after a single use, greatly outweighed any benefit to be gained from a policy of general disclosure of such questions. In implementation of this policy, the department undertook to make a determination on an individual basis as to whether a particular test or test question would be reused. Determinations have been made not to re-use certain tests or test questions and those have either been released or are deemed releasable.
As to each of the examinations involved in these proceedings, and presumably as to all examinations administered since the adoption of the “test release policy”, at the time of the examination, each candidate is given a copy of the candidate’s record of answers (Form DP-825) which sets forth the procedure for seeking review of the test. The candidate is allowed to record his answers to the test question on this form and to take the form with him upon completion of the test. Should any candidate feel aggrieved following publication of the proposed key answers to the particular test, a review of the disputed questions on the test can be arranged. At such review, which extends over a time period during which the test was conducted (e.g., a four-hour test = a four-hour review period), the candidate is shown a copy of the test booklet and the proposed key answers. Reference materials may be used during the review but no notes or other materials relating to the test may be removed from the review premises. Protests may be prepared and submitted at the time of the review or within seven calendar days thereafter. These review procedures have previously been found to be fair and reasonable by this court. (See Matter of Montemarano v New York City *335 Dept. of Personnel, Supreme Ct, NY County, Index No. 04382/79.)
Following the administering of the attorney trainee examination, the Feinstein petitioners requested, pursuant to FOIL, to be allowed to examine their answer sheets and examination questions in order to make written protest against the proposed key answers. Their request was denied on the ground that the “test questions *** have not been finally administered” but they were offered an opportunity to utilize the procedure outlined above in preparing such protest as they deemed warranted. Their appeal from this determination was denied by the Department of Personnel’s appeals officer.
SSEU petitioners similarly requested an opportunity, under FOIL, to inspect and copy the written test questions for the staff analyst exam. Their request was denied on the ground that the respondents intended to re-use the test questions and, therefore, they had not been “finally administered” and were exempt from disclosure.
Petitioners contend that test questions and answers are “finally administered” when they are “first administered” and that an intended re-use of the questions and answers is not a permissible basis for claiming their exemption from the disclosure provisions of FOIL.
They argue that the test release policy and review procedures adopted by respondents do not enable them to adequately prepare for an examination or to make useful effective protest against the proposed tentative key answers; that for a candidate to be able to effectively protest a particular question or an examination in its entirety, he must be allowed to intelligently scrutinize the exam questions and answers over a longer period of time than is provided by the procedures permitted by the respondents. They say, therefore, that the questions must be made available for inspection and copying under FOIL.
Respondents contend that the benefits to be derived from the ability to re-use test questions are substantial. A significant cost saving is achieved in not having to prepare new tests or test questions for each examination. Additionally, the validation of a test (the degree to which it accu *336 rately measures that which it is intended to measure) depends to a large degree upon its reliability, that is, the consistency with which the item tests a particular knowledge, skill or ability. The review and protest policy employed by the respondents, together with a computer analysis of the answers of all candidates to a particular test, enables respondents to compile empirical data, on the basis of which they can improve tests through revision or modification where necessary, and to more effectively arrive at unambiguous and discriminating test questions that are valid and reliable.
Thus, by not releasing test booklets following the administering of the exam, both the City of New York and the State of New York, which administer some 5,000 examinations annually involving more than 40,000 questions, some 35,000 of which are re-used, are able to more quickly promulgate reliable examinations, compile lists and fill jobs by appointment or promotion at considerable cost savings and with greater confidence that the skills of the candidates, rather than their ability to memorize prior test questions, are reflected in their test scores.
To realize these benefits, respondents contend that they must have the discretion to determine when a particular test question had been “finally administered” and thus no longer exempt from disclosure under FOIL.
Additionally, they argue that by not releasing test booklets to candidates except upon a selective basis and thereby preserving the confidentiality and integrity of the test question, they become eligible to make use of “banks” of civil service test questions maintained by other jurisdictions that are members of the Mid-Atlantic Personnel Assessment Consortium (MAPAC). This, they say, in the long run will result in substantial economic and administrative savings to the City of New York.
DECISION
It is clear that the public policy of this State favors accessibility by the public to decisions reached by government and to processes by which those decisions are reached. (Public Officers Law, § 84.) Thus, it is the general rule that “public disclosure laws are to be liberally con *337 strued *** and that statutory exemption from disclosure must be narrowly construed to allow maximum access”. (Matter of Zuckerman v State Bd. of Parole, 53 AD2d 405, 407-408.) It is also clear, however, that FOIL “recognized a legitimate need on the part of [the] government to keep some matters confidential” and “where the governmental agency convincingly demonstrates its need, disclosure will not be ordered” (Matter of Fink v Lefkowitz, 47 NY2d 567, 571). Indeed section 89 (subd 4, par [b]) of the Public Officers Law affirmatively imposes upon the agency claiming exemption of the requested record pursuant to subdivision 2 of section 87 “the burden of proving that such record falls within the provisions of such subdivision two.”
Here, respondents justify their refusal to release the examination questions for Attorney Trainee Exam No. 8079 and Staff Analyst Exam No. 7011 upon the express language of section 87 (subd 2, par [h]) of the Public Officers Law, contending that the request has been made “prior to the final administration of such questions.” They interpret the statute as meaning that the determination as to when examination questions or answers have been finally administered lies within the discretion of the Department of Personnel.
Support for this interpretation is found, not only in the literal language of the statute, but also in the only available evidence of the legislative intent underlying the use of that language. In a letter dated September 23,1977, from a sponsor of the legislation, Assemblyman Mark A. Siegel, to the Counsel to the New York State Civil Service Department, the Assemblyman stated that “It is my intention that the determination as to when the final administration of an exam has occurred, shall reside solely with the agency administering that exam.” This statement of Assemblyman Siegel’s intention was in response to a hypothetical situation posed in a letter to Assemblyman Siegel by Mr. Cross which suggested that “A judge might, for example, decide that ‘final administration of such questions’ meant the holding of a particular civil service examination.” He further stated that “If this language as interpreted by the Court were to foreclose our Department’s reuse of civil service examination questions *** in the *338 same or modified form, because of the public disclosure of these questions and answers, calamity would be the result.”
Additional support for the respondent’s position is found in advisory opinion FOIL — A.O. — 1371 of the committee on public access to records, interpreting section 87 (subd 2, par [h]) of the Public Officers Law. That opinion, entitled to be upheld if not unreasonable or irrational, expressed the belief of the committee, as stated by its executive director that “the intent of the cited provision is clear in that it seeks to protect against the disclosure of examination questions or answers sought before the questions are finally administered” and that based upon the representations that the examination questions and answers at issue were likely to be used in the future and repeated in subsequent examinations, he could not “advise that the examination * * * is available as of right.”
It is also appropriate to note, as some indication of the intent of the Legislature, that when the Truth in Testing Law (Education Law, art 7-A; L 1979, ch 672), which requires all questions used in an examination to be made public within 30 days of the administration of the test was enacted (Education Law, § 342, subd 1, par a), civil service examinations were expressly excluded from the disclosure requirements (Education Law, § 340, subd 1). Certainly, if the Legislature had meant that civil service questions and answers be deemed “finally administered” after their initial use and thus subject to disclosure, they could have either expressly said so in section 89 (subd 2, par [h]) of the Public Officers Law or, at the very least, not excluded them from the disclosure requirements of the Truth in Testing Law.
The considerations tendered by respondent as the rationale for their determination that these examination questions and answers are not automatically subject to release under FOIL following their initial administration, are neither arbitrary nor capricious and constitute a reasonable exercise of the discretion reposed in them by the legislation. Re-use of questions, for administrative efficiency in preparing and administering future tests, establishing the validity and reliability of the tests, as well as *339 monetary savings thereby achieved are legally sufficient bases for withholding the questions from petitioners and adopting the “test release” policy complained of by SSEU. It is pertinent to observe that most, if not all of the jurisdictions that replied to the respondents’ 1980 survey referred to above, deny access to copies of examinations for much the same reasons as those cited by respondents as the basis for their policy decision.
Moreover, a review of Freedom of Information Laws of sister States discloses that only 12 have provisions relating to test questions. Four States, Connecticut,[2] Vermont,[3] Washington[4] and West Virginia[5] have an absolute exemption for test questions, scoring keys and other examination data used to administer a licensing examination, examination for employment or academic examinations. Colorado,[6] Florida,[7] Maryland[8] and Wyoming[9] exempt test questions from their FOIL statutes, permit inspection of the examinations and scores but prohibit their copying.
Kentucky[10] allows inspection of test questions only upon the order of a court of competent jurisdiction. Oregon[11] and the District of Columbia[12] FOIL statutes are comparable to New York’s, with Oregon exempting test questions, scoring keys or other examination data before the examination is given and if the examination is to be used again, and the District of Columbia exempting test questions and answers to be used in future license employment examinations but not previously administered examinations or answers to questions thereon. California,[13] in a statute similar to the . New York Truth in Testing Law, provides for an absolute exemption of test questions other than standardized tests administered to students seeking admission to educational institutions.
*340 The conclusion is compelled therefore, that insofar as these proceedings seek to challenge the determinations of the respondents not to release the questions and answers for Staff Analyst Exam No. 7011 and Attorney Trainee Exam No. 8079, as being arbitrary and capricious and in violation of the Freedom of Information Law, they must be dismissed. The record contains ample evidence of a substantial nature supporting those determinations and the respondents have adequately demonstrated that these records “fall(s) within the provisions of [such] subdivision two” of section 87 of the Freedom of Information Law. (See Matter of Fink v Lefkowitz, 47 NY2d 567, supra; Public Officers Law, § 89, subd 4, par [b].)
The contentions by SSEU that the “test release” policy adopted by respondents in September, 1978, constituted improper rule making in that nó public notice was given and hearing held in respect thereto, in violation of rule 2.6 of the Rules of the Personnel Director, and that this policy violates the “merit and fitness” provisions of section 6 of article V of the New York State Constitution, are wholly without merit. It does not appear that this policy is either a modification or amendment of any existing rule, nor does it constitute the addition of a new rule. Thus, there is no requirement that there be public notice and hearing prior to implementation of the policy. (Civil Service Law, § 20, subd 2; Rules and Regulations of the City Personnel Director, § 2.6.)
Moreover, to the extent that this challenge is a claim that the adoption of this “test release policy” is a “determination *** made in violation of lawful procedure” (CPLR 7803, subd 3) it is untimely commenced (CPLR 217).
That branch of the Feinstein petition which seeks class action certification likewise must be denied. A class action is not an appropriate vehicle in proceedings brought against a governmental agency where principles of stare decisis will adequately protect future petitioners. (Matter of Martin v Lavine, 39 NY2d 72, 75; Community Serv. Soc. v Welfare Inspector Gen. of State of N. Y., 91 Misc 2d 383, affd 65 AD2d 734.)
For the foregoing reasons, the applications of petitioners are denied and both of these petitions are dismissed.

. Responses were received from Maryland, Missouri, New Jersey, Pennsylvania, Wisconsin, Michigan, Virginia, Rhode Island, West Virginia and Delaware; Philadelphia, Pennsylvania, and Minneapolis, Minnesota; Prince Georges and Baltimore Counties, Maryland; the New York and New Jersey Port Authority; and the Co-operative Organization for the Development of Employee Selection Procedures. (CODESP).

. Conn Gen Stat Ann, § 1-19, subd [b], par [6].

. Vt Stat Ann, tit I, §317, subd [b], par [8].

. Wash Rev Code Ann, §42.17.310, subd [1], par [f].

. W Va Code Ann, § 29B-1-4, subd [3].

. Col Rev Stat Ann, § 24-72-204, subd [2], par [a], cl [II].

. Fla Stat Ann, § 119.07, subd [3], par [c].

. Ann Code of Md, art 76A, §3, subd [b], par [ii].

. Wyo Stat, § 9-9-103, subd [b], par [ii].

. Ky Rev Stat, § 61.878, subd [e].

. Ore Rev Stat, § 192.500, subd [1], par [d].

. DC Code Encyc, § 1-1524, subd [a], par [5].

. Cal Govt Code, § 6254, subd [g].