TOWN OF GLASTONBURY ET AL. *v.* FREEDOM OF INFORMATION COMMISSION ET AL.

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE NO. 260335
HARTFORD-NEW BRITAIN AT HARTFORD

---

Memorandum filed January 9, 1984

*Tyler, Cooper & Alcorn,* for the plaintiffs.

*Constance L. Chambers,* for the named defendant.

*Gersten & Gersten,* for the defendant Kirk H. McKinney.

BARRY, J. This appeal was brought by the plaintiffs pursuant to § 4-183 of the General Statutes, the Uniform Administrative Procedure Act, and § 1-21i (d) of the General Statutes. The plaintiffs, the town of Glastonbury, the fire commission of the town of Glastonbury and the chairman of the fire commission of the town of Glastonbury, all public agencies within the meaning of § 1-18a (a) of the General Statutes, seek judicial review by this court of a decision of the freedom of information commission (FOIC). In that decision, the FOIC ordered the plaintiffs to comply with the request of Kirk H. McKinney, a defendant herein, by furnishing him certain records relating to the July, 1979 examination for lieutenant in the Glastonbury fire department, namely, copies of the written examination, tapes of the oral examination and any recommendations made by the board that administered the examination. McKinney is a member of the Glastonbury fire department and was an unsuccessful applicant for promotion to the rank of lieutenant. There were a total of three applicants for two lieutenant positions; McKinney, thus, was the only unsuccessful candidate.

His request for "access to the written tests, the tapes of the interviews and the recommendation of the Examining Board" is contained in a letter to the chairman of the Glastonbury fire commission dated June 6, 1980. The request was denied by letter of the town attorney dated July 2, 1980.

Although McKinney was not explicit as to what information he sought, it is not a matter of contention between the parties that the desired material includes all questions asked of each applicant, their answers to each question as well as any recommendation of the board of examiners.

The hearing before Commissioner Judith Lahey, sitting as a hearing officer of the FOIC, took place on February 10, 1981. Evidence taken at that hearing disclosed that the examination was given in two parts, written and oral. The written portion of the examination contained true and false questions, essay questions and apparently multiple-choice questions, in all approximately sixty-five questions. The oral portion of the examination contained eleven questions. The test was administered by a board of examiners consisting of three firemen from other fire departments. The oral questions were asked of each applicant from a prepared list. They are standard questions and had been used in other examinations and will be used in future examinations, according to Edward Siwy, former chief of the Glastonbury fire department. Both the questions and answers contained in the oral examination were taped. The written questions are likewise standard and have been used on other examinations given by the department. Chief Siwy testified that they will be used in future examinations as well. With respect to the third item requested by McKinney, namely the recommendation of the board of examiners, there is nothing in the record to support the contention that the board of examiners made any recommendation at all. McKinney,

at the FOIC hearing, admitted that he had no evidence of any written recommendation and he was vague in his allegation that some recommendation took place. The function of the board of examiners was to conduct the examination and to give the scores to a committee comprised of the chief and assistant chief of the Glastonbury fire department and one member of the fire commission. This committee of three persons transmitted the scores of the applicants to the fire commission with recommendations from the committee not from the board of examiners. Following the hearing, Commissioner Lahey filed with the FOIC a proposed finding. At its regular meeting of May 27, 1981, the FOIC adopted the proposed finding and ordered the requested material to be furnished McKinney as set forth above.

The sole issue[1] raised in this appeal is whether or not the FOIC correctly interpreted the meaning of § 1-19 (b) (6) of the General Statutes which provides that among those items that are exempt from disclosure are "test questions, scoring keys and other examination data used to administer a licensing examination, examination for employment or academic examinations." In its decision, the FOIC concluded that "§ 1-19 (b) (6) . . . exempts from disclosure only records pertaining to examinations which have not yet been administered." This interpretation necessarily requires that any test questions and related examination data must be disclosed once the test is given. The precise question posed by this case has not been addressed previously by Connecticut courts. Although the factual and discretionary determinations of administrative agencies are to

---

[1] The plaintiffs alleged in their substituted complaint that the FOIC's decision also violated General Statutes § 1-19 (b) (2) which exempts from disclosure "personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy." This allegation was not pursued in the plaintiffs' brief or in oral argument and is considered abandoned.

be given considerable weight by the courts, it is for the courts, and not for administrative agencies, to expound and apply governing principles of law. *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 342–43, 435 A.2d 353 (1980).

An appeal to this court exists only under statutory authority. *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 467, 378 A.2d 547 (1977); *Schwartz* v. *Hamden,* 168 Conn. 8, 10, 357 A.2d 488 (1975); *Nader* v. *Altermatt,* 166 Conn. 43, 53, 347 A.2d 89 (1974). Accordingly, for the court to have jurisdiction of this appeal, the party appealing must be aggrieved. To qualify for an appeal from a decision of an administrative agency, one must demonstrate a specific, personal and legal interest in the subject matter of the decision, and the party claiming aggrievement must establish that the personal and legal interest has been specially and adversely affected by the decision. *Old Rock Road Corporation* v. *Commission on Special Revenue,* 173 Conn. 384, 387, 377 A.2d 1119 (1977); *New Haven* v. *Public Utilities Commission,* 165 Conn. 687, 700, 345 A.2d 563 (1974). The record establishes that the plaintiffs are aggrieved parties entitled to maintain this appeal.

The general rule under the Freedom of Information Act favors disclosure and exceptions to that rule will be narrowly construed in the light of the underlying purpose of the act. *State* v. *Januszewski,* 182 Conn. 142, 170–71, 438 A.2d 679 (1980). The burden of proving the applicability of an exemption rests upon the agency claiming it. *Wilson* v. *Freedom of Information Commission,* supra, 329.

This court may reverse or modify the FOIC's decision for any of the reasons set forth in § 4-183 (g) of

the General Statutes.[2] The plaintiffs claim that the FOIC has made an error in law in its interpretation of § 1-19 (b) (6) of the General Statutes and that that error has prejudiced their rights. This court agrees with the plaintiffs' claim.

The Connecticut Supreme Court has held frequently that the practical interpretation of legislative acts by governmental agencies responsible for their administration is a recognized aid to statutory construction. *Local 1186* v. *Board of Education,* 182 Conn. 93, 105, 438 A.2d 12 (1980); *Jones* v. *Civil Service Commission,* 175 Conn. 504, 508, 400 A.2d 721 (1978); *State ex rel. James* v. *Rapport,* 136 Conn. 177, 182–83, 69 A.2d 645 (1949). This principle does not apply, however, when the statutory provision itself is not in need of judicial construction. The intent of the legislature is to be found in the meaning of the words of the statute; that is in what the legislature did say, not in what it meant to say. *Frazier* v. *Manson,* 176 Conn. 638, 642, 410 A.2d 475 (1979); *State* v. *Grant,* 176 Conn. 17, 20, 404 A.2d 873 (1978). Where those actual words are plain and unambiguous, there is no room for judicial construction of the statute. *Board of Trustees of Woodstock Academy* v. *Freedom of Information Commission,* 181 Conn. 544, 549, 436 A.2d 266 (1980); *Jones* v. *Civil Service Commission,* supra, 509; *Doe* v. *Manson,* 183 Conn. 183, 186, 438 A.2d 859 (1981).

The language contained in § 1-19 (b) (6) is unadorned and unambiguous. Had the legislature intended that

---

[2] The relevant portion of General Statutes § 4-183 (g) reads as follows: "The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

the exemption for tests and related examination data apply only to tests to be given in the future, it could have easily said so. It is not for this court to sit as a revisor of statutes. *Aspetuck Valley Country Club, Inc.* v. *Tax Commissioner,* 180 Conn. 5, 10, 428 A.2d 328 (1980); *Ziperstein* v. *Tax Commissioner,* 178 Conn. 493, 503, 423 A.2d 146 (1979). If courts do not have the authority to substitute their own ideas of what might be a wise provision in place of a clear expression of legislative will; see *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 21, 434 A.2d 293 (1980); *Penfield* v. *Jarvis,* 175 Conn. 463, 474–75, 399 A.2d 1280 (1978); *United Aircraft Corporation* v. *Fusari,* 163 Conn. 401, 415, 311 A.2d 65 (1972); then neither do administrative agencies.

The thrust of the FOIC's argument in support of its interpretation of § 1-19 (b) (6) of the General Statutes is that it is bad policy for a government agency not to disclose test questions and related materials where they have repeated use by the agency. The FOIC argues that such nondisclosure aids those who prepare preparatory guides for standardized tests, those prospective test-takers who have the "right contacts" or those who have taken the test at an earlier date. In oral argument before this court, counsel for the FOIC indicated that the FOIC wants to adopt a policy that the re-use of examination questions and materials may lead to abuse of testing systems. While this intent may be commendable, the appropriate recourse for change is with the General Assembly. The competing policy considerations for nondisclosure of standard examination questions and related materials are set forth in *Social Service Employees Union, Local 371* v. *Cunningham,* 109 Misc. 2d 331, 437 N.Y.S.2d 1005 (1981), and need not be repeated here. It is of interest to note, however, that the New York court characterized (p. 339) the Connect-

icut exemption under our Freedom of Information Act for test questions and examination data as "absolute." This court is of the same opinion.

Accordingly, for the foregoing reasons, the decision of the FOIC is reversed and the plaintiffs' appeal is sustained.