In the Matter of HERALD COMPANY, Petitioner, v WILLIAM R. ROY et al., Respondents.

Fourth Department, April 5, 1985

### APPEARANCES OF COUNSEL

*Bond, Schoeneck & King* (*S. Paul Battaglia* of counsel), for petitioner.

*Michael Colodner* (*Megan Tallmer* of counsel), for respondents.

### OPINION OF THE COURT

SCHNEPP, J.

In this original CPLR article 78 proceeding in the nature of prohibition, petitioner seeks judgment vacating and prohibiting enforcement of alleged oral orders of respondent William R. Roy which prevent respondent Russell Mangicaro and others from disclosing to the public and media the identities of jurors selected to hear criminal charges in Onondaga County, directing respondents to allow petitioner access to court and other records containing the names of such jurors, and for other relief. Petitioner is a Syracuse newspaper publisher. Respondent Roy is a Justice of the Supreme Court of the State of New York and Administrative Judge of the Fifth Judicial District and respondent Mangicaro is the Onondaga County Commissioner of Jurors.

The petition alleges that Commissioner Mangicaro refused to provide a reporter with the names and addresses of jurors who had been selected to serve at a pending murder trial, or to permit her to examine court documents and records containing the information because Justice Roy had issued an order directing that the names and addresses of such jurors would no longer be released to the public or press. The basis for Justice Roy's alleged action was a directive dated June 13, 1984, issued by counsel for the Office of Court Administration which indicated that, under Judiciary Law § 509 (a) court officers should not release names and addresses of jurors without a court order.

Petitioner also claims that it was denied access to minute books maintained by the clerk of each Criminal Court Part because Justice Roy had ordered that the identity of such jurors was not to be disclosed by court personnel. Petitioner contends that the minute books are subject to public inspection under Judiciary Law § 255-b.[1]

---

1. "A docket-book, kept by a clerk of a court, must be kept open, during the business hours fixed by law, for search and examination by any person." (Judiciary Law § 255-b.)

Petitioner asserts that the information had been previously routinely released to the media, and claims that the orders are invalid and unconstitutional, contrary to petitioner's statutory rights and constitute a form of "closure" of the trial proceedings.

■ Initially, we point out our disagreement with petitioner's arguments that its right to access to criminal trials has been unconstitutionally restrained and that failure to provide the information it seeks constitutes a form of "closure" of trial proceedings. Even assuming the existence of the oral orders, there is no doubt from our review of this record that the entire criminal proceedings, including the voir dire, are open to the public. As petitioner concedes, any newspaper reporter attending the voir dire proceeding could ascertain the identity of the jurors. This argument is specious.

The OCA directive, a copy of which is attached to the petition, opines that the "safest route" of the Commissioner of Jurors is not to release information relative to the names and addresses of jurors who have served on trial panels without a court order by reason of the provisions of Judiciary Law § 509 (a).[2]

In their verified answer respondents acknowledge that the practice of supplying the names and addresses of jurors sitting at criminal trials was discontinued based on the OCA directive and that the information will be released only upon order of the Appellate Division. They further state that the minute books contain the names but not the addresses of the jurors. In a supporting affidavit Justice Roy asserts that petitioner's reporter was advised by Commissioner Mangicaro that the information sought would not be released without a court order because it was derived from confidential juror questionnaires. In outlining the procedure followed by the Commissioner of Jurors, he states that every prospective juror is sent a questionnaire in accordance with Judiciary Law § 513 and that the questionnaires, when completed, contain names and home addresses

---

2. "§ 509. Qualification of jurors

"(a) The commissioner of jurors shall determine the qualifications of a prospective juror on the basis of information provided on the juror's qualification questionnaire. The commissioner of jurors may also consider other information including information obtained from public agencies concerning previous criminal convictions. A record of the persons who are found not qualified or disqualified or who are exempted or excused, and the reasons therefor, shall be maintained by the commissioner of jurors. The county jury board shall have the power to review any determination of the commissioner as to qualifications, disqualifications, exemptions and excuses. Such questionnaires and records shall be considered confidential and shall not be disclosed except to the county jury board or as permitted by the appellate division."

from which a list of eligible jurors is prepared. When a case is ready for trial, the Commissioner sends a copy of the list of eligible jurors' names to the court clerk along with a separate ballot for each juror, listing the juror's name, address and occupation, all of which information is derived from the questionnaires. The ballots are made available to the court and counsel but not to the general public. Justice Roy further states that a general list containing the name, occupation and town, village or city of residence of each juror in a particular panel continues to be made available to the public. The list, however, does not contain the street addresses of the jurors. At voir dire, prospective jurors give their names and the general location of their residence, but not their actual home addresses. When jurors are selected for a particular trial panel, the court clerk, with the aid of the ballots, records the names of the jurors, but not their addresses, in a "minute book". Justice Roy argues that Judiciary Law § 255-b does not apply to minute books kept by part clerks but instead refers to the judgment dockets maintained by the county clerk.

The jurisdiction of this court is invoked pursuant to CPLR 506 (b) (1) which directs that a proceeding against a Justice of the Supreme Court shall be commenced in the Appellate Division. This provision concerns subject matter jurisdiction (*see, Matter of Nolan v Lungen,* 61 NY2d 788; CPLR 7804 [b]) and it is nonwaivable. It logically follows that the only basis for this court's exercise of original jurisdiction is that the actions of a Supreme Court Justice, here the Administrative Judge of the Fifth Judicial District, are being challenged. The respondents claim that they have "no objection" to this court's exercise of jurisdiction in the matter since it is their position that pursuant to the Judiciary Law § 509 (a), only the Appellate Division may order the disclosure of jurors' names and addresses. However, as noted, subject matter jurisdiction cannot be consented to. The petitioner rejects this alternate basis for this court's jurisdiction, in any event, and asserts that it is before this court challenging respondent Justice Roy's "orders and conduct" along with respondent Mangicaro's conduct, and not to seek release of juror questionnaires or any other information which is subject to release only on authority of the Appellate Division.

A review of the pleadings and supporting papers here reveals that there is a question of fact as to whether Justice Roy has issued any orders with respect to either jurors' names and addresses or court minute books or has taken any action which may be challenged. This factual issue would necessarily have to be tried before this controversy could be resolved and judgment

granted. The respondents deny that respondent Justice Roy has ever issued any orders in this matter with respect to either jurors' names and addresses or court minute books. While this court may order a trial to settle that question (*see,* CPLR 7804 [h]), this procedure would be meaningless since relief by way of prohibition, which petitioner seeks, would not provide it with any remedy.

The extraordinary remedy of prohibition is not mandatory, but may only issue in the sound discretion of the court (*Matter of Dondi v Jones,* 40 NY2d 8; *La Rocca v Lane,* 37 NY2d 575, 579, *cert denied* 424 US 968). "In exercising this discretion, various factors are to be considered, such as the gravity of the harm caused by the excess of power, the availability or unavailability of an adequate remedy on appeal or at law or in equity and the *remedial effectiveness of prohibition* if such an adequate remedy does not exist" (*Matter of Dondi v Jones, supra,* p 13; emphasis added).

■ Here, an order of prohibition against Justice Roy would not provide the petitioner with what it ultimately seeks — the identity of jurors sitting at criminal trials. Moreover, we know of no duty imposed on the Commissioner and court clerks to orally provide anyone with the names and addresses of the jurors, and we are not empowered, in any event, to order these public officials to answer petitioner's question and divulge the information it seeks. To the extent that petitioner seeks access to public records and minute books, an article 78 proceeding in the nature of mandamus would be the proper vehicle to endeavor to obtain this relief against the respondent Commissioner and the court clerks (CPLR 7803 [1]). However, such proceeding must properly be brought in Supreme Court, Special Term (CPLR 7804 [b]) and not in this court in the first instance. Accordingly, the within petition should be dismissed.

■ However, in dismissing the petition, since the issues may arise at Special Term in a later proceeding instituted by petitioner, it would seem appropriate to construe Judiciary Law § 509 (a) and § 255-b. Judiciary Law § 509 (a) provides "Such questionnaires and records shall be considered confidential and shall not be disclosed except to the county jury board or as permitted by the appellate division." A plain reading of this section makes it apparent that the "records" which are to be considered confidential are the records of "persons who are found not qualified or disqualified or who are exempted or excused, and the reasons therefor". "The words and phrases used in a statute should be given the meaning intended by the

lawmakers" (McKinney's Cons Laws of NY, Book 1, Statutes § 230). The term "questionnaires" can have only one meaning and obviously it refers to the juror qualification questionnaire described in section 509 (a), the form of which is prescribed by statute (Judiciary Law § 513) along with the information contained therein. There can be no doubt that not only are the questionnaires per se confidential but that the cloak of confidentiality attaches to records in the possession of the Commissioner derived from such "questionnaires and records" (*see, People v Guzman,* 60 NY2d 403, 414-415). "Statutes will not be construed as to render them ineffective" (McKinney's Cons Laws of NY, Book 1, Statutes § 144). The Legislature certainly intended that the protection offered by this section extend to the information contained in such "questionnaires and records" and to records maintained by the Commissioner to which such information may be transposed.

Moreover, access to the minute books maintained by the clerks of Criminal Parts may be obtained not by virtue of the provisions of Judiciary Law § 255-b but because the books must be kept pursuant to CPLR 9702 (5) and searched and certified by the court clerks pursuant to Judiciary Law § 255.

Accordingly, the petition should be dismissed.

BOOMER, J. P., GREEN and O'DONNELL, JJ., concur.

Application unanimously denied and petition dismissed, without costs.