*475
 
 OPINION OF THE COURT
 

 Per Curiam.
 

 During the evening rush hour on October 22, 1985, at the Times Square subway station in Manhattan, appellant Mary Ventura, in what the police termed "an unprovoked assault”, pushed a young woman into the path of an oncoming train, causing serious injury. Held by bystanders, Ventura was arrested and charged with attempted murder and assault in the first degree and remanded to Bellevue Hospital Center for psychiatric observation. These events were immediately reported in the press.
 

 In the ensuing days, the newspapers reported that in July 1985 Ventura had been a psychiatric patient in Kings County Hospital, and that she had been released on September 27, 1985 — only weeks before the assault — following a judicial proceeding under the Mental Hygiene Law. Her name and photograph, the details of the incident, her hospitalization and her background were widely publicized. Ventura’s mother and her neighbors made public statements about her hospitalization, her release and her past erratic, even violent behavior. Within two days of the incident, a spokesman for appellant Health and Hospitals Corporation (HHC) announced that the Judge who had presided at Ventura’s retention hearing ordered release over the objection of psychiatrists, and the Judge and his law clerk responded that the psychiatric recommendation had been followed. Controversy immediately erupted over whether procedures for the release of mental patients, designed for the protection of both the patients and the public, were being properly applied — and if not where the fault lay.
 

 In this factual context, the Special Term Judge, affirmed by the Appellate Division, granted the application of respondent New York News, Inc. (now joined by other media respondents) for release of the court file, to the extent of ordering disclosure of the transcript of Ventura’s retention hearing, redacted so as to reveal solely counsels’ arguments (including the history of Ventura’s hospitalization), the testifying doctor’s recommendation (including some reference to Ventura’s condition), and the court’s determination. This redacted transcript is the focus of the present appeal. Appellants, Ventura and HHC, emphasize the importance of maintaining strict secrecy, while respondents urge that the public interest in proper procedures for release of confined mental patients demands disclosure.
 

 
 *476
 
 The Legislature, sensitive to the strong public interest in maintaining confidentiality of psychiatric information, has enacted a comprehensive scheme to shield records of mental patients from public view. As Governor Cuomo noted in approving legislation clarifying and strengthening that scheme: "At the very heart of the client-professional relationship in mental health care is its confidentiality. The bills strengthen existing protection against the inappropriate disclosure of mental health records and thereby strengthen the integrity of mental health care” (Memorandum of Governor Cuomo, 1984 McKinney’s Session Laws of NY, at 3654). The confidentiality provisions of the Mental Hygiene Law operate to protect the patient’s interests by preventing private or embarrassing disclosures and also by encouraging unconstrained diagnoses and treatment appropriate to the patient’s condition; they extend not only to patient records on care and treatment but also to clinical information, including information concerning the patient’s admission and legal status and the documents pertinent to those matters (Mental Hygiene Law § 33.13), and to hospitalization and discharge proceedings (Mental Hygiene Law § 9.31). The limited instances when information about a patient or a patient’s proceeding may be disclosed, and to whom it may be disclosed, are strictly prescribed by statute.
 

 In the extraordinary circumstances presented, Ventura’s retention hearing has — in a single narrow respect — become a matter of public concern, calling into question for the first time whether the press can ever be "someone properly interested” in the release of papers sealed under the Mental Hygiene Law
 
 (see,
 
 § 9.31 [f]). Here, Ventura attracted public interest not merely because of statements of an HHC official or hearing Judge. Rather, her assault, together with the statements of her mother and neighbors, immediately focused attention on her identity and condition, including her hospitalization and discharge only weeks before the incident. Widespread concern naturally centered on the procedure that resulted in her discharge from confinement. To say that, even where a patient’s identity is known and there is a legitimate public concern in disclosure of information, secrecy must be blindly maintained — that the press can
 
 never
 
 be "someone properly interested”
 
 (contrast,
 
 Mental Hygiene Law § 9.31 [f],
 
 with
 
 § 33.13 [d]) — safeguards no interest sought to be protected by the Legislature and sacrifices a legitimate public interest in information regarding procedures for the release of mental
 
 *477
 
 patients. We therefore agree with both lower courts that some disclosure of information to respondents is appropriate here.
 

 The first inquiry must of course be whether the public interest in disclosure can be fully satisfied without risk to the public interest in nondisclosure. Here we agree with respondents, in their argument before us, that disclosure can be accomplished in a manner that "will help the public determine whether current procedures for release of confined mental patients worked properly, without offending the confidentiality provisions of the statute.” But the transcript of the retention hearing, even as carefully redacted below, reveals certain information concerning Ventura’s hospitalization and condition in a situation where the dual public interest can be otherwise fully served. Public concern centers not on details of Ventura’s personal history, condition or treatment but on retention procedures, and particularly the question whether the court ordered her release contrary to or in accordance with the doctor’s medical recommendation. As stated by respondents in their brief to this court: "The only issue to be determined by releasing the transcript is who, if anyone, has been telling the truth, and who has not. That, in turn, would disclose whether statutory procedures were followed, if not why not, and, if so, whether they should be changed.” Making public that, at the retention hearing (held Sept. 12, 1985) the doctor recommended hospitalization for two weeks, and that the court followed this recommendation and ordered her release after two weeks, thus satisfies the need for information regarding statutory procedures, without revealing information about the patient. The testimony of the doctor and transcript of the retention hearing, in relevant part, read as follows:
 

 "Q. When do you think the patient could be discharged?
 

 "A. Two weeks.
 

 "MR. FARMER: I have no further questions.
 

 "THE COURT: The doctor’s recommendation of two week hospitalization.
 

 [Off-the-record discussion.]
 

 "THE COURT: Writ sustained. Release in two weeks.”
 

 At all events, disclosure of papers sealed under the Mental Hygiene Law cannot be premised on rule 694.7 (c) of the Appellate Division, Second Department (22 NYCRR 694.7 [c]), which was a basis of the decision below. That rule simply limits media access to hearings relating to the mental condition of a person under the Mental Hygiene Law. It in no way
 
 *478
 
 sanctions release of papers, as to which there are specific statutory prohibitions. Whether the rule itself comports with the confidentiality requirements of the Mental Hygiene Law is an issue we do not reach on this appeal.
 

 Accordingly, the order of the Appellate Division should be modified, without costs, by limiting unsealing of the transcript to the above-quoted material, and as so modified, affirmed.
 

 Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Alexander, Titone and Hancock, Jr., concur in Per Curiam opinion.
 

 Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.