In the Matter of NEWSDAY, INC., Appellant, v ROBERT J. SISE, as Chief Administrative Judge of the Office of Court Administration of the State of New York, et al., Respondents.

Second Department, October 20, 1986

## APPEARANCES OF COUNSEL

*Townley & Updike (Andrew L. Hughes* and *Doreen Klein* of counsel), for appellant.

*Michael Colodner (John Eiseman* and *Megan Tallmer* of counsel), for respondents.

## OPINION OF THE COURT

EIBER, J.

■ In this CPLR article 78 proceeding, we are called upon to determine whether the petitioner, the publisher of a daily newspaper, may, pursuant to the provisions of the Freedom of Information Law (hereinafter FOIL) (Public Officers Law art 6), compel the Commissioner of Jurors to disclose the names and addresses of those persons selected and sworn to serve as jurors on a highly publicized murder trial. A second and related issue which we are asked to consider is whether Judiciary Law § 509 (a)[1] protects from unrestricted disclosure information that is contained in the records utilized in or generated by the juror selection process. Based upon our review of the relevant statutes and ever mindful of the policy

---

1.  Judiciary Law § 509 (a) reads as follows: "The commissioner of jurors shall determine the qualifications of a prospective juror on the basis of information provided on the juror's qualification questionnaire. The commissioner of jurors may also consider other information including information obtained from public agencies concerning previous criminal convictions. A record of the persons who are found not qualified or disqualified or who are exempted or excused, and the reasons therefor, shall be maintained by the commissioner of jurors. The county jury board shall have the power to review any determination of the commissioner as to qualifications, disqualifications, exemptions and excuses. Such questionnaires and records shall be considered confidential and shall not be disclosed except to the county jury board or as permitted by the appellate division".

concerns engendered by this case, we conclude that the information sought by the petitioner comes within the orbit of the confidentiality requirements of the Judiciary Law and is, therefore, statutorily exempt from disclosure under the provisions of FOIL. Accordingly, the judgment appealed from should be affirmed.

Throughout June and July of 1984, the petitioner, Newsday, Inc., the publisher of a daily newspaper which is distributed primarily on Long Island, covered, in a series of detailed articles, the murder trial of one William Patterson. Mr. Patterson was alleged to have murdered his estranged wife, a Suffolk County resident, by shooting her through a window of her home.

On July 3, 1984, after the Patterson jury had commenced deliberations, a Newsday reporter who had been covering the trial wrote to the Commissioner of Jurors of Suffolk County requesting that the Commissioner provide him with the names and addresses of the jurors who had been selected to sit on the case. Evidently, a similar oral request had previously been denied. The Commissioner, acting upon the advice of counsel for the Office of Court Administration (hereinafter OCA), refused to release the information sought, absent a court order. It appears that the predicate for this decision was a directive issued by counsel for OCA in response to a similar but unrelated request, which stated, in essence, that the names and home addresses of jurors are derived from confidential juror questionnaires and, therefore, pursuant to Judiciary Law § 509 (a), would require judicial authorization as a precondition to release.

On July 4, 1984, the Justice presiding at the Patterson trial was compelled to declare a mistrial by reason of the jury's apparent inability to reach a verdict. Newsday's desire to gain access to the jurors was evidently intensified by the declaration of a mistrial, for, on August 20, 1984, counsel for Newsday, under the aegis of the provisions of FOIL filed a formal request for access to the records or lists maintained by the Commissioner which contained the names and home addresses of the jurors impaneled to serve on the Patterson murder trial.

In his written request, the petitioner's counsel asserted that the information sought by Newsday did not come within the purview of Judiciary Law § 509 (a) and that the confidentiality requirement of this statute was limited to information of a

personal nature. Disclosure of the names and home addresses of the jurors, he argued, would not impair or compromise the objectives of the statute, since the same information could be derived from other sources, such as the responses of prospective jurors during voir dire.

While accepting the premise that Judiciary Law § 509 (a) was enacted to insure and preserve the confidentiality of juror records and that the statute did, in fact, constitute a lawful legislative restraint upon unqualified public access to the actual questionnaires, the petitioner's counsel, nevertheless, vigorously maintained that disclosure of the nonconfidential aspects of these records was not only permitted by the Judiciary Law, but mandated by the "presumption of access afforded by the New York Freedom of Information Law".

The foregoing request was subsequently referred by the Commissioner of Jurors to counsel for OCA. By letter dated September 13, 1984, OCA's counsel denied the request citing four principal reasons, to wit: that the records sought were, in fact, court records and, therefore, exempted from the mandates of FOIL; that the records were, in any event, protected from disclosure by Judiciary Law § 509 (a); that an unwarranted invasion of privacy would result from the release of the jurors' names and home addresses; and, finally, that the disclosure of the requested information might endanger the lives or safety of these jurors. OCA's counsel further noted that, contrary to the assertions of the petitioner's attorney, jurors in Suffolk County were not required to disclose their actual home addresses during voir dire, but were merely asked to provide a general description of the vicinity in which they resided. Hence, the information sought could not be obtained in the manner suggested by the petitioner's counsel.

Undaunted by the repeated refusal to release the names and addresses of the Patterson jurors, the petitioner commenced this CPLR article 78 proceeding to compel disclosure in accordance with its request. In support of the petition, Newsday emphasized, once again, that it had no interest in obtaining personal or confidential information; it simply wanted names and addresses. Entitlement to this information was predicated on the following grounds: FOIL's mandate of open and broad public disclosure of records of government, the common-law right of access to judicial records, and a similar right derived from US Constitution 1st Amendment.

Special Term, satisfied that the protections of the Judiciary

Law extended to all records utilized in evaluating the qualifications of prospective jurors, dismissed the proceeding without prejudice to renewal before this court. We agree that Judiciary Law § 509 (a) renders confidential all records used in or generated by the juror selection process, including the names and addresses of prospective jurors which are derived therefrom. Moreover, in light of this specific statutory prohibition against disclosure, we find that the petitioner's attempt to procure such information by the invocation of the provisions of FOIL is unavailing.

FOIL was enacted to provide access to records of government and "proceeds under the premise that the public is vested with an inherent right to know and that official secrecy is anathematic to our form of government" *(see, Matter of Fink v Lefkowitz,* 47 NY2d 567, 571). The Legislature, however, sensitive to the potentially competing demands and interests within and among the various sectors of society, and, cognizant of the need to keep confidential certain information necessary to the proper functioning of our democratic system, promulgated eight specific categories of exemptions to the disclosure requirements of FOIL. Under the mandate of this statute, all records of an agency are presumptively available for public inspection, unless they fall within one of these categories of exemptions *(see, Matter of Scott, Sardano & Pomeranz v Records Access Officer of City of Syracuse,* 65 NY2d 294, 296; *Matter of Farbman & Sons v New York City Health & Hosps. Corp.,* 62 NY2d 75, 79-80). Principal among these exceptions is one which provides that an agency may deny access to records or portions thereof that "are specifically exempted from disclosure by state or federal statute" *(see,* Public Officers Law § 87 [2] [a]).

Such an exception is directly applicable to the matter under review, by virtue of Judiciary Law § 509 (a). This provision shields from public scrutiny and renders confidential all records and questionnaires utilized in the juror selection process. Judiciary Law § 509 (a), in broad and unequivocal terms, provides, in pertinent part, that "[s]uch questionnaires and records * * * shall not be disclosed except to the county jury board or as permitted by the appellate division". Thus, the limited circumstances when information about a prospective juror may be disclosed and to whom it may be disclosed, rests in the sound discretion of the Appellate Division. For this reason, the proper procedure for obtaining access to information contained in juror records is by way of application to the

Appellate Division *(see, People v Guzman,* 60 NY2d 403, 414-415, *cert denied* 466 US 951; *People v Heisler,* 84 AD2d 848).

There are legitimate policy concerns underlying this statutory proscription against disclosure. The requirement of confidentiality of Judiciary Law § 509 (a) operates to protect the interests of prospective jurors by prohibiting unrestricted disclosure of these records, and, by necessary implication, of the information contained in these records or derived therefrom. The questionnaires and other related records contain many details of a juror's private life *(see, People v Guzman, supra).* By requiring that the information remain confidential, the statute encourages truthfulness in responses by prospective jurors, shields them from possible harassment and intimidation, protects them from unwarranted invasions of privacy, prevents retribution and, generally, enables jurors to discharge their solemn civic duty to pass fairly upon the matters which they are entrusted to decide. The integrity of our jury system is, in large part, dependent upon the vitality of these principles and the promotion of these laudatory objectives *(see, United States v Barnes,* 604 F2d 121, 140-141, *cert denied* 446 US 907; *United States v Gibbons,* 602 F2d 1044, 1050-1052, *cert denied* 444 US 950; *People v De Lucia,* 15 NY2d 294, *cert denied* 382 US 821, *on rearg* 20 NY2d 275; *People v Foti,* 99 AD2d 517).

While we are sensitive to the needs of the media, as well as the broad constitutional protections afforded to those engaged in publishing, gathering and disseminating newsworthy information, the petitioner's interest in ascertaining the identity of those selected to serve as jurors on a particular case is greatly outweighed by the privacy interests of these jurors, especially in the face of a clear expression of legislative intent that these privacy interests be respected and that the information which has been deemed "confidential" be protected from indiscriminate public disclosure *(see, Kuzma v Internal Revenue Serv.,* 775 F2d 66). Moreover, it is also of significance that disclosure can be accomplished in a manner that will not offend the confidentiality requirement of the statute, since there is nothing in Judiciary Law § 509 (a) which precludes the petitioner from securing the information sought, by use of an alternative means. Indeed, the statute itself explicitly sanctions the use of an alternative procedure, i.e., by providing that the information may be obtained by way of a direct application to the Appellate Division. Thus, "the public interest in disclosure can be fully satisfied without risk to the public interest in nondis-

closure" *(see, Matter of New York News [Ventura],* 67 NY2d 472, 477).

While the petitioner acknowledges, in principle, these fundamental tenets, it, nevertheless, argues that the plain language of the statute operates to protect only the records and questionnaires themselves, but does not render names and addresses confidential, which information is initially obtained from various public records and sources, well before the juror questionnaires are ever distributed or evaluated.

A similar argument was advanced in *Matter of Herald Co. v Roy* (107 AD2d 515, *appeal dismissed* 65 NY2d 922). There, the petitioner, a Syracuse newspaper publisher, sought the names and addresses of jurors selected to serve at a pending murder trial. As in the instant case, the Commissioner of Jurors denied the request, citing the OCA directive which, apparently, was the exact letter used to justify the determination herein. The Appellate Division, Fourth Department, dismissed the proceeding on procedural grounds not relevant here. However, recognizing that the issues might arise at some future date, the court considered it appropriate to construe Judiciary Law § 509 (a). In so doing, it wrote: "The term 'questionnaires' can have only one meaning and obviously it refers to the juror qualification questionnaire described in section 509 (a), the form of which is prescribed by statute (Judiciary Law § 513) along with the information contained therein. There can be no doubt that not only are the questionnaires per se confidential but that the cloak of confidentiality attaches to records in the possession of the Commissioner derived from such 'questionnaires and records' *(see, People v Guzman,* 60 NY2d 403, 414-415). 'Statutes will not be construed as to render them ineffective' (McKinney's Cons Laws of NY, Book 1, Statutes § 144). The Legislature certainly intended that the protection offered by this section extend to the information contained in such 'questionnaires and records' and to records maintained by the Commissioner to which such information may be transposed" *(Matter of Herald Co. v Roy, supra,* at p 520). We concur in the foregoing reasoning. To permit the petitioner to have access to the information derived from records which, by statute, have been deemed confidential, would defeat the fundamental and salutary public purpose underlying its enactment and would effectively render its mandate substantially meaningless. The statute was enacted to protect the privacy interests of jurors as well as to prevent the risks and dangers inherent in unrestricted disclo-

sure from coming to fruition. The potential for transgression of these protections is just as real whether the names and addresses are obtained directly from juror questionnaires or are disclosed by court personnel from other documents onto which this information may have been transposed.

■■ In conclusion, inasmuch as FOIL specifically exempts from the wealth of material discoverable thereunder, information which is deemed confidential under any existing statute (see, Public Officers Law § 87 [2] [a]), and, having determined that disclosure sought in the manner pursued by the petitioner is barred by the confidentiality requirements of Judiciary Law § 509 (a), the petitioner's efforts to compel the Commissioner of Jurors to release the information specified in its petition must be rejected.[2] We note, however, that our decision in no way precludes the petitioner from utilizing the available statutory procedure for obtaining the information sought and we express no opinion as to whether any direct application made to this court, pursuant to Judiciary Law § 509 (a), would be granted in the event the petitioner were to decide to pursue this course of action.

Accordingly, the judgment of Special Term should be affirmed.

NIEHOFF, J. P., LAWRENCE and KOOPER, JJ., concur.

Ordered that the judgment of the Supreme Court, Suffolk County, dated February 19, 1985, is affirmed, with costs.

---

■ 2. Assuming, for the sake of argument, that the names and addresses of jurors do not come within the ambit of Judiciary Law § 509 (a), the petitioner would, nonetheless, be incapable of compelling the Commissioner of Jurors to release this information. The Commissioner of Jurors is considered an officer of the court and performs services according to rules prescribed by the Appellate Division, which services are an integral part of the operation of the courts. The Commissioner is, therefore, considered part of the judiciary and is not subject to the Freedom of Information Law (Public Officers Law § 86; cf. Matter of Pasik v State Bd. of Law Examiners, 102 AD2d 395).