*995 OPINION OF THE COURT
Richard F. Braun, J.
This is a special proceeding, pursuant to CPLR 2308 (b). Petitioners seek an order compelling respondent to comply with a subpoena issued by petitioner, the Department of Mental Health, Mental Retardation and Alcoholism Services (Department), for statutory costs, and directing that respondent produce all documents requested by the Department petitioner at its office on a date to be determined. Respondent cross-moves to quash the subpoena.
The Commissioner of the Department petitioner issued a subpoena, dated May 26, 1999, commanding respondent to produce at the Commissioner’s office on June 12, 1999 (the motion was submitted on August 19, 1999) all medical records in respondent’s possession relating to the care and treatment of Andrew Goldstein for an investigation that the Department is conducting. On January 3, 1999, he allegedly caused the death of Kendra Webdale by pushing her from a subway platform onto the subway tracks into the path of an oncoming subway train.[1]
The Commissioner of the Department petitioner has subpoena power to compel the production of documents for investigations in performing the Department’s functions (NY City Charter § 593 [m]). Section 593 (l) of the New York City Charter provides that the Commissioner of the Department petitioner, among other things, has the power to arrange for the Department petitioner to visit, inspect, and investigate all mental health providers. The Department petitioner must review services and local facilities for persons with mental disabilities (Mental Hygiene Law § 41.13 [a] [1]), and attempt to assure that sufficient services are available for all persons with mental disabilities within its purview and that local providers of services coordinate and cooperate with each other (Mental Hygiene Law § 41.13 [a] [4]).
Dr. Michael Lesser, the Medical Director of the Department petitioner, who is a psychiatrist, states that his responsibilities *996 include reviewing local services and facilities for persons with mental disabilities in the New York City area. He says that in doing so the Department petitioner tries to determine whether there are any gaps in the system of treatment for persons with mental disabilities, whether more services are needed, whether the quality of service-providing institutions is adequate, and whether other types of services are necessary. He further asserts that the Department petitioner often gives feedback to the institutions involved in providing services.
The Medical Director further states that the Department petitioner conducts reviews after incidents involving mentally ill patients, such as killings, assaults, and suicides. He says that Andrew Goldstein had been treated at several mental health facilities and that he believes that respondent was one of the last to do so after Mr. Goldstein was discharged from a hospital. Dr. Lesser asserts that the Department petitioner requested and obtained medical records from every institution that treated Andrew Goldstein, except respondent, and that the documents are needed from respondent in order to complete the investigation and determine what steps, if any, should be taken to attempt to prevent in the future the happening of any incidents akin to the terrible one that caused the death of Kendra Webdale.
Respondent’s attorney sent a letter to an attorney for the Department petitioner, pursuant to CPLR 2304, requesting that the Department petitioner withdraw the subpoena. That request only has to be made before making a motion to quash a subpoena returnable before an administrative agency, not for a subpoena returnable within a court action or proceeding (Brooks v City of New York, 178 Misc 2d 104, 105 [Sup Ct, NY County 1998]). The General Counsel for the Department petitioner responded by letter rejecting the request.
Respondent objects to any disclosure and contends that petitioners are not entitled to the documents subpoenaed, or, if so, only by court order. Respondent does not object to the disclosure of any specific documents.
Mental Hygiene Law § 33.13 (c) states that information about mental health patients, and clinical records and information tending to identify patients are not public records, and that such information and records may only be released under certain limited exceptions. Petitioners cite to Mental Hygiene Law § 33.13 (c) (12) as authorizing the release to petitioners by respondent of the documents sought. The problem with this *997 contention by petitioners is that there is a statutory defect.[2] Mental Hygiene Law § 33.13 (c) (12) allows release of records to a “director of community services” as defined in Mental Hygiene Law article 9. Mental Hygiene Law article 9 defines such a director as “the director of community services for the mentally disabled appointed pursuant to article eleven of this chapter.” (Mental Hygiene Law § 9.01.) However, there is no article 11 of the Mental Hygiene Law, so there is no cross-referenced definition for Mental Hygiene Law § 33.13 (c) (12) to permit the release sought under that exception.
The analysis does not end there, however. This court still can order the release of the documents sought if the court finds “that the interests of justice significantly outweigh the need for confidentiality” (Mental Hygiene Law § 33.13 [c] [1]).
The horrific incident in which Kendra Webdale was killed led to the Department petitioner’s appropriately exercising its powers to investigate the past provision of services to Andrew Goldstein by mental health care institutions. A killing such as the one of which Andrew Goldstein is accused not only should have led to the criminal investigation which was conducted, and, where a crime was found to have taken place, appropriate prosecution, but also the kind of investigation that the Department petitioner is pursuing. That is its statutory responsibility. The Department petitioner must act in this regard to determine whether the treating mental health providers acted properly in the past and to see what steps can be taken in the future to minimize the occurrence of incidents such as the one which Andrew Goldstein is alleged to have perpetrated, for the sake of potential victims, as well as to improve necessary treatment to help the mentally ill.
Respondent’s reliance upon Matter of New York News (Ventura) (67 NY2d 472 [1986]) is misplaced. That proceeding involved the confidentiality of disclosure to the media of records of a retention hearing under the Mental Hygiene Law, and the Court of Appeals in fact did allow limited disclosure. Here, the disclosure would be to an agency which has a statutorily mandated responsibility to investigate. Furthermore, and of particular importance, the party receiving any information disclosed pursuant to Mental Hygiene Law § 33.13 must keep the information confidential (Mental Hygiene Law § 33.13 [f]).
The court finds that the interests of justice do significantly outweigh any need for confidentiality, other than that imposed *998 by Mental Hygiene Law § 33.13 (f). The motion should be granted to the extent of ordering that respondent is compelled to comply with the subpoena by producing to petitioners at the Department petitioner’s office by September 9, 1999 all documents that were sought by the subpoena, or on any other date agreed to by the parties, subject to the provision of confidentiality under Mental Hygiene Law § 33.13 (f). Petitioners have not contended or shown that respondent has acted in bad faith in withholding the subpoenaed records, and thus this court should not exercise its discretion to award costs. The cross motion must be denied.

. The criminal prosecution of Andrew Goldstein is still pending at this time. The incident led to passage of Kendra’s Law which was signed into law by the Governor on August 9, 1999. Parts of Kendra’s Law became effective immediately, and part will take effect later this year and part on April 1, 2000. The legislative findings of Kendra’s Law indicate that it is intended to establish assisted out-patient treatment, improve coordination of care for mentally ill persons living in the community, expand the use of conditional release in psychiatric hospitals, and improve dissemination of information between and among health providers and general hospital emergency rooms.

. It is recommended that the Legislature act to correct the defect.