In the Matter of ELLIOT B. PASIK, Respondent-Appellant, v STATE BOARD OF LAW EXAMINERS, Appellant-Respondent.

First Department, June 28, 1984

**APPEARANCES OF COUNSEL**

*Elliot B. Pasik,* respondent-appellant *pro se.*

*Stanley A. Camhi* of counsel (*Melvyn Leventhal* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for appellant-respondent.

BLOOM, J.

Petitioner sat for the New York State Bar Examination on February 24 and 25, 1981. He was notified on May 21, 1981 by respondent, which had conducted the examination, that he had passed. He thereafter filed application with this department for admission to the Bar. After examination by our Committee on Character and Fitness, he was certified to this court for admission. On July 7, 1981, he was duly admitted to the Bar of this State.

Some three weeks after his admission, petitioner wrote to respondent, the State Board of Law Examiners, requesting that he be informed under the Freedom of Information Law ([FOIL]; Public Officers Law, § 84 *et seq.*) of (a) his score on the multistate section of the examination, including his score for each of the six subjects encompassed by the examination; (b) his score on the New York short answer section of the examination; (c) his score on each of the six essay questions; and (d) his percentile rank among all passing scores in the multistate, New York short answer and essay sections, and over-all rank. By letter dated August 7, 1981, respondent, through its executive secretary, notified petitioner of his scores on the Multistate Bar Examination. It also informed him that "[n]either a breakdown by subject from the Multistate exam, nor scores from the New York portion of the bar examination are made available to those who pass." The letter made no reference to petitioner's percentile rank in the various examinations nor did it refer to petitioner's over-all rank. Petitioner answered by letter dated August 25, 1981 demanding that respondent "fully explain in writing * * * the reasons for further denial, or provide access to the record[s] sought" (Public Officers Law, § 89, subd 4, par [a]). In that letter, he supplemented his demand by requiring that he be provided with "true and correct copies of each of my essays with the scores for each indicated thereon." On September 8, 1981, the Board of Law Examiners responded asserting that "as part of the judicial branch of government" it was not subject to FOIL.

Petitioner then commenced this CPLR article 78 proceeding to review the determination of respondent. In his

amended petition, he expanded substantially on the information sought and demanded disclosure to him of (i) his scores on the six separate and individual subjects within the multistate section; his score on the New York short answer section and his scores on the six essay questions; (ii) copies of all questions; (iii) copies of his answers; (iv) copies of the answer "key" to the short answer questions and the "model" answers to the six essay questions; (v) his percentile rank among all other examination scores; (vi) all internal rules, regulations, guidelines, instructions, standards, reports, memoranda, correspondence, records, minutes or other documents pertaining to the method of grading the essay answers; (vii) all internal rules, regulations, guidelines, instructions, standards, reports, memoranda, correspondence, records, minutes or other documents of any description pertaining to the method of formulating and preparing the essay questions; (viii) all internal rules, regulations, guidelines, instructions, standards, reports, memoranda, correspondence, records, minutes or other documents of any description pertaining to the method of formulating and preparing the New York short answer questions; (ix) the names, addresses, educational and employment backgrounds and ages of all attorneys, law clerks, law assistants and paralegals who grade or otherwise assist in grading the essay answers and/or formulate or prepare or otherwise assist in formulating or preparing the New York short answer questions and (x) all internal rules, regulations, guidelines, instructions, standards, reports, memoranda, correspondence, records, minutes or other documents of any description pertaining to respondent's substantive and procedural administration of appeals, wherein applicants who are notified that they have failed seek review for the purpose of obtaining a favorable determination.

Respondent moved to dismiss the amended petition on the ground that it failed to state a cause of action upon which relief may be granted. Special Term granted the motion to the extent only of excusing respondent from producing records which it did not compile[1] and records, possession of which the Board of Law Examiners had

1. Petitioner's percentile or other rank among examination scores.

permanently surrendered prior to petitioner's request for the information.[2] Additionally, it limited the demands relating to internal rules, regulations, guidelines, etc., to those in physical form and held that the demand for the home addresses of those who formulate and grade questions, and their educational and employment backgrounds to be an unwarranted intrusion upon personal privacy and therefore, exempt from disclosure under section 89 (subd 2, par [b]) of the Public Officers Law. It also denied petitioner's demand for counsel fees (Public Officers Law, § 89, subd 4, par [c]). Both sides have appealed, respondent from so much of the judgment as compels disclosure and petitioner from so much of the judgment as denied him counsel fees (114 Misc 2d 397). We are of the opinion that Special Term erred in requiring any disclosure by respondent. By necessary consequence, the demand for counsel fees falls. Accordingly, we modify to deny petitioner's application *in toto*.

We start with the premise that a governmental body seeking an exemption from the disclosure requirements of FOIL is required to establish its right thereto (*Matter of Westchester Rockland Newspapers v Kimball*, 50 NY2d 575). "Only where the material requested falls squarely within the ambit of one of [the] statutory exemptions may disclosure be withheld." (*Matter of Fink v Lefkowitz*, 47 NY2d 567, 571.)

The preamble to FOIL (Public Officers Law, § 84) contains a broad declaration of the right of the public, individually and collectively, and represented by a free press, to have access to the records of government. Subdivision 3 of section 86 defines the term "agency" in all inclusive terms. However, it expressly excludes from the definition the judiciary which, in subdivision 1 of that section is defined to mean "the courts of the state, including any municipal or district court, whether or not of record." Section 87 deals with access to *agency* records and enumerates the specific types of records which are exempt from disclosure. Section 88 provides for the kinds of records required to be kept by the *Legislature* and mandates the adoption, by the Temporary President of the Senate and the Speaker of the Assem-

---

2. The Multistate Bar exam and petitioner's answers thereto.

bly, of rules and regulations for access to such records. No requirement is contained in the statute for the maintenance of *judicial* records. Hence, the conclusion is justified that the statute requires that only *agency* and *legislative* records are subject to the access requirements of FOIL. The judiciary is exempt from the obligation to supply such records (*Glatzer v Smith,* 73 AD2d 562, app dsmd 49 NY2d 800, mot for lv to app den 51 NY2d 740).

We are, therefore, directly confronted with the issue of whether the State Board of Law Examiners is an "agency", as that term is defined in subdivision 3 of section 86 of the Public Officers Law or whether, in the discharge of its duties it is exercising a judicial function and, therefore, part of the "judiciary".

The briefs of the parties cite a plethora of authority, none of which is directly in point. Nor, from our own research have we been able to find such authority. Accordingly, we are compelled to analyze the nature of the process whereby a candidate for admission to the Bar is admitted to the office of attorney and counselor at law, and the relationship of the Board of Law Examiners to that process.

In 1777, shortly after the colonies had severed the umbilical cord which tied them to the English Crown, the State of New York adopted its first Constitution. That Constitution expressly delegated to the courts the power to admit attorneys to the practice of law. The Constitution of 1822 was silent on the subject. By consequence, it vested in the Legislature the power to deal with the matter (*Matter of Cooper,* 22 NY 67, 90).[3] This situation has prevailed for more than a century and a half. Currently, the statute (Judiciary Law, § 53) provides for the regulation of admission to the practice of law by the Court of Appeals and requires that court to prescribe rules for a uniform system of examination for candidates for admission to the Bar. Such rules govern the State Board of Law Examiners in the performance of its duties (Judiciary Law, § 53, subd 3). Section 56 of the Judiciary Law requires the Court of Appeals to appoint a State Board of Law Examiners which

---

**3.** For an excellent and detailed study of the history of the relationship of the courts to the examination of applicants for admission to the Bar see *Matter of Brennan* (230 App Div 218).

shall consist of three members of the Bar, each of whom shall hold office for three years. Section 520.7 of the Rules of the Court of Appeals (22 NYCRR 520.7) mandates that the State Board of Law Examiners shall conduct written Bar examinations twice a year "consisting of legal problems in both adjective and substantive law" and provides that "it [the State Board of Law Examiners] shall by rule prescribe a list of subjects which will indicate the general scope of the bar examination." Subdivision 1 of section 90 of the Judiciary Law empowers the Appellate Divisions to appoint committees on character and fitness. It provides further that, upon certification by the State Board of Law Examiners that an applicant for admission to the Bar has passed the required written examination, and the presentation of satisfactory evidence to the Committee on Character and Fitness that the applicant possesses the character and general fitness requisite for an attorney, the applicant shall be admitted to practice.

Thus, the process of admission, from its inception to the administration of the oath of office, follows in a single unbroken line, all, pursuant to section 53 of the Judiciary Law, under the aegis of the Court of Appeals. Each component part is a delegated part of the judicial process acting pursuant to the authority of the Court of Appeals in accordance with section 53 of the Judiciary Law, and each performs a judicial function. Accordingly, each is exempted from the ambit of FOIL.

To sustain his position, petitioner relies in the main on *Babigian v Evans* (104 Misc 2d 140, affd 97 AD2d 992). That case is, however, clearly distinguishable. There, petitioner, a court employee, sought information from the Office of Court Administration (OCA) in connection with impending collective bargaining negotiations between associations of court employees and OCA. OCA granted most of the information sought. Special Term granted Babigian's request for the remaining items, rejecting the claim that OCA was exempt from FOIL. We affirmed, without opinion. The Constitution, as amended in 1977 (NY Const, art VI, § 28), created the office of Chief Administrator of the Courts. Section 212 of the Judiciary Law makes it plain that his duties, and the duties of his office, are ministerial

and administrative. His discretionary power, in contradistinction to that of the State Board of Law Examiners, is limited to functional matters and it is required to be exercised in accordance with standards and policies formulated by the Chief Judge of the Court of Appeals and approved by the members of that court.

The State Board of Law Examiners, on the other hand, has substantial discretionary power within the ambit in which it operates. It selects the subjects upon which the Bar examination is based. It formulates the questions posed by those examinations. In sum, it formulates and grades one of the elements — the Bar examination — which is part of the process which leads to admission.

As we made clear in *Matter of Sugarman* (51 AD2d 170), the process of admission from its inception to its culmination is a judicial function. We do not think that the Legislature, by its enactment of FOIL, intended to interfere with the historic relationship between the courts and the Bar by making available to anyone who might seek the information one of the essential bases on which admission is bottomed.

Additionally, the potential for mischief in any other holding is so apparent that discussion thereof is unnecessary (see *Matter of Social Servs. Employees Union v Cunningham,* 109 Misc 2d 331, affd without opn 90 AD2d 696). We conclude, therefore, that respondent has sustained the burden cast upon it (*Matter of Westchester Rockland Newspapers v Kimball,* 50 NY2d 575, *supra*) and that the material demanded falls within the ambit of exempt material (*Matter of Fink v Lefkowitz,* 47 NY2d 567, *supra*).

Accordingly, the orders of the Supreme Court, New York County (Arthur E. Blyn, J.), entered January 10, 1983 are modified on the law and petitioner's petition dismissed, *in toto,* without costs. Appeal from order denying reargument should be dismissed, without costs as nonappealable.

SANDLER, J. P., SULLIVAN, CARRO and FEIN, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on January 10, 1983, unanimously modified, on the law, and petitioner's petition dismissed, *in toto,* without costs and without disbursements. The appeal

from the order of said court, entered on January 12, 1983, is dismissed as nonappealable, without costs and without disbursements.