Filed 1/12/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 11

Timothy C. Lamb, Petitioner and Appellant

v.

State Board of Law Examiners, 

State of North Dakota, Respondent and Appellee

No. 20090131

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Lawrence E. Jahnke, Judge.

AFFIRMED.

Opinion of the Court by Maring, Justice.

Timothy C. Lamb (argued), self-represented, petitioner and appellant.

Ronald H. McLean (argued), Special Assistant Attorney General, and Joseph A. Wetch Jr. (on brief), Serkland Law Firm, P.O. Box 6017, Fargo, ND 58108-6017, for respondent and appellee.

Lamb v. State Board of Law Examiners

No. 20090131

Maring, Justice.

[¶1] Timothy C. Lamb appeals from the district court’s orders denying his motion to reconsider and his application for a writ of mandamus to require the State Board of Law Examiners to provide information about the February 2008 bar examination procedures.  We affirm, concluding the district court did not abuse its discretion because Lamb does not have a clear legal right to the requested information.  

I

[¶2] Based on the results of Lamb’s February 2008 bar examination, the State Board of Bar Examiners recommended Lamb not be admitted to the Bar of North Dakota.  Lamb requested a formal hearing under Admission to Practice R. 10(B) before the State Board of Law Examiners.  Before the hearing, he moved for discovery requesting information about: (1) grading techniques; (2) how raw scores are converted; (3) whether the Board performs periodic assessments of its scores; (4) whether a report is available of psychometric procedures; (5) whether the Board has an ongoing assessment of its procedures; (6) what practices the Board uses in maintaining acceptable standards; (7) how the essay scoring judges are trained; (8) whether a content analysis has been conducted to measure the relationship of questions to being competent in the legal profession; and (9) security measures and related bar examination information.  The Board’s Hearing Panel denied his motion, but provided information regarding:  (1) selection and preparation of graders; (2) grading guidelines given to graders; (3) selection of test questions; (4) how often the pass fail policy is reviewed; (5) where the conversion and scaling of scores are performed; and (6) where the Multistate Performance Test and Multistate Essay Examination questions are prepared.  Lamb also emailed the secretary-treasurer of the Board and requested information under the open records laws.  In response, the Board provided its annual reports for the past ten years.  Lamb requested an Attorney General’s opinion on whether the Board had violated the open records law.  The Attorney General did not consider Lamb’s request because Lamb submitted it more than thirty days after the alleged violation.

[¶3] Lamb applied for a writ of mandamus to the district court.  In his application, he asked the district court to compel the Board to provide “certain requested information . . . which was submitted in a formal request to the Board, and denied.”  He also asked the court to order the Board to provide information and documentation regarding the February 2008 bar exam procedures, including “e-mails, phone messages, letters, memoranda, notes, minutes of meetings, training materials, and all relevant documentation.”  After the parties submitted briefs, the district court heard oral argument.  The district court issued an order denying Lamb’s application for a writ.  In its order, the district court noted that the Board had provided Lamb with a great deal of information including:  a copy of his two personal Multistate Performance Test question and answer booklets with the drafter’s point sheet and model answers for each, a copy of his personal six Multistate Essay Examination question and answer booklets and the analyses for those questions, and a copy of the North Dakota State Board of Law Examiner’s Grading Guidelines.  The court also stated it was unable to identify any confidentiality exceptions relevant to Lamb’s case under the North Dakota Century Code, North Dakota Constitution, or North Dakota Admission to Practice Rules.  Therefore, the court concluded that Lamb failed to establish he had a clear legal right to the information because he could not demonstrate the information was an exception to the confidentiality provisions of the Admission to Practice Rules or an open records exception under N.D.C.C. § 44-04-

18.8.  Lamb appeals both the memorandum decision and order denying his writ of mandamus and the order denying the motion to reconsider. 

II

[¶4] Section 32-34-01, N.D.C.C., which governs a writ of mandamus, provides: “The writ of mandamus may be issued by the supreme and district courts to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust, or station . . . .”  It is within a district court’s sound discretion whether to issue a writ of mandamus.  
Eichhorn v. Waldo Twp. Bd. of Supervisors
, 2006 ND 214, ¶ 20, 723 N.W.2d 112.  We will reverse a district court’s decision concerning a writ of mandamus as an abuse of discretion only when it acts arbitrarily, capriciously, unreasonably, or if it misapplies or misinterprets the law.  
Kenmare Educ. Assn. v. Kenmare Pub. Sch. Dist. #28
, 2006 ND 136, ¶ 9, 717 N.W.2d 603.  A writ of mandamus requires both a clear legal right to performance of the particular acts sought to be compelled by the writ and that no other plain, speedy, and adequate remedy in the ordinary course of law exists.  
Wutzke v. Hoberg
, 2004 ND 42, ¶ 3, 675 N.W.2d 179. 

III

[¶5] On appeal, Lamb argues the district court misapplied the law because Admission to Practice R. 13 is either “subordinate” to N.D.C.C. § 44-04-18 or unconstitutional under N.D. Const. art. XI, § 6.  Lamb argues that the Supreme Court does not have the power to promulgate rules that conflict with N.D.C.C. § 44-04-18 and N.D. Const. art. XI, § 6.  Therefore, he contends he has established a clear, legal right necessary to grant a writ of mandamus because the records he seeks should be available to the public.  We hold that Lamb has not established a clear legal right to a writ of mandamus. 

N.D. Const. art. XI, § 6 provides:

Unless otherwise provided by law, all records of public or governmental bodies, boards, bureaus, commissions, or agencies of the state or any political subdivision of the state, or organizations or agencies supported in whole or in part by public funds, or expending public funds, shall be public records, open and accessible for inspection during reasonable office hours.

A similar provision is codified at N.D.C.C. § 44-04-18(1): “Except as otherwise specifically provided by law, all records of a public entity are public records, open and accessible for inspection during reasonable office hours.”  Lamb argues that both N.D. Const. art. XI, § 6 and N.D.C.C. § 44-04-18 apply to all of the records of the  Board of Law Examiners. 

[¶6] We conclude that Admission to Practice R. 13 is neither subordinate to N.D.C.C. § 44-04-18 nor unconstitutional under N.D. Const. art. XI, § 6.  Lamb asserts that the language “unless otherwise provided by law” means that only the Legislative Assembly can enact a law to exempt records from public inspection.  Therefore, he asserts the Board’s records are open to the public absent a statutory provision making the records confidential. 

[¶7] Article XI, § 26 of the North Dakota Constitution provides, “The legislative, executive, and judicial branches are co-equal branches of government.”  This Court has recognized that “the creation of the three branches of government by our constitution operates as an apportionment of the different classes of power whereby there is an implied exclusion of each branch from the exercise of the functions of the others.”  
State v. Hanson
, 558 N.W.2d 611, 614 (N.D. 1996).  We have also previously recognized, “[t]he term ‘by law’ is not limited to statute, but includes rules adopted by the Supreme Court pursuant to the court’s authority contained in Section 3, Article VI, North Dakota Constitution.”  
Dickinson Newspapers, Inc. v. Jorgensen
, 338 N.W.2d 72, 75 (N.D. 1983).  Under N.D. Const. art. VI, § 3, this Court has the constitutional authority to promulgate rules regarding the admission of attorneys to practice law in North Dakota: 

The supreme court shall have authority to promulgate rules of procedure, including appellate procedure, to be followed by all the courts of this state; and, unless otherwise provided by law, to promulgate rules and regulations for the admission to practice, conduct, disciplining, and disbarment of attorneys at law.  

[¶8] We do not consider the words “unless otherwise provided by law” ambiguous.  We note our interpretation is consistent with the history of the legislative resolution proposing the constitutional amendment.  The language “unless otherwise provided by law” was not originally included as part of the proposed constitution submitted as part of the 1972 constitutional convention.  The language originated in an interim study on unifying the State’s court system conducted by the Legislative Council’s Judiciary “A” Committee in 1971-1973.  The original proposal was:

SECTION 3.  AMENDMENT.) Section 87 of the Constitution of the state of North Dakota is hereby amended and reenacted to read as follows:

. . . . 

The supreme court shall have authority to promulgate rules of procedure to be followed by all the courts of this state, and to promulgate rules for the admission to practice, disciplining, and disbarment of attorneys at law.

Minutes of Interim Comm. on Judiciary
 “A” (Oct. 23, 1972) (considering concurrent resolution amending Article IV of the Constitution).  The Judiciary “A” Committee amended the proposal to include the “unless otherwise provided by law” language:

IT WAS MOVED BY REPRESENTATIVE McGAUVRAN AND SECONDED BY SENATOR COUGHLIN that Section 3 be adopted as presented.  THIS MOTION WAS LATER WITHDRAWN.

Mr. Pederson, discussing Lines 17 and 18, Page 2, inquired as to how the Supreme Court could be responsible for disciplining attorneys if it hadn’t adopted standards of conduct by which those attorneys would have to abide.  In addition, he wondered whether the section could possibly suggest that an attorney would be immune from criminal liability, and would only be subject to disciplining or disbarment by the Supreme Court.  The Committee consensus was that the section could not be construed as providing attorneys with an immunity from criminal liability.  Mr. Pederson suggested that the word “conduct,” be added after the word “practice” in Line 18, Page 2, to ensure that the Supreme Court would also have the power to promulgate rules which would set forth standards of conduct for attorneys.

The Committee discussed at length the problems which courts were having with attorneys who felt that it was necessary, in the defense of a criminal client, to attack the judicial system and the trial court.

Judge Knudson suggested that all the language in Line 17 after the word “state” be deleted, and that Line 18 be deleted.  Mr. Kirby disagreed and felt that the court should have the power provided in the present draft, but felt that the word “conduct” should be added after the word “practice” in Line 18, Page 2.  Senator Barth suggested that perhaps someone, or somebody besides the Supreme Court should have  the power to discipline attorneys.  Mr. Pederson suggested that the problem might be solved if Line 18, Page 2 were stricken, and the words “for the conduct of law” were added in lieu thereof.  

Judge Glaser read certain sections in Chapter 27-11 indicating that the Supreme Court presently has power to promulgate rules concerning admission of attorneys, practice in civil courts, and practice in criminal courts.  Thereafter, MR. PEDERSON MOVED that Lines 16, 17, and 18, Page 2 (Section 3) be deleted.  THIS MOTION FAILED FOR LACK OF A SECOND.

IT WAS MOVED BY JUDGE KNUDSON AND SECONDED BY MR. PEDERSON that a period be placed after the word “state” in Line 17 and that the balance of that line, and Line 18, Page 2 be deleted.

JUDGE TEIGEN MOVED AN AMENDED TO THAT MOTION to add the words “when authorized by law” after the word “and” in Line 17, Page 2; and add the word “conduct” after the word “practice” in Line 18, Page 2.  THIS MOTION DID NOT RECEIVE A SECOND.

Judge Heen suggested that the words “, unless otherwise provided by law,” be added after the word “and” in Line 17, Page 2; and the word “conduct” be added after the word “practice” in Line 18, Page 2.

IT WAS MOVED BY JUDGE TEIGEN, SECONDED BY SENATOR HOLAND, AND CARRIED that Judge Knudson’s amendment be amended by deleting all prior amendments and adding the words “, unless otherwise provided by law,” after the word “and” in Line 17, Page 2; and adding the words “and regulations” after the word “rules” in Line 17, Page 2; and adding the word “conduct” after the word “practice”, in Line 18, Page 2.  

REPRESENTATIVE McGAUVRAN’S MAIN MOTION TO ADOPT SECTION 3 THEN CARRIED, and Section 3 was adopted as amended.  

Minutes of Interim Comm. on Judiciary
 “A” 7-8 (Oct. 23, 1972) (considering concurrent resolution amending Article IV of the Constitution).  The final report of the North Dakota  Legislative Council to the 43
rd
 Legislative Assembly recommended a concurrent resolution which would create a new Article of the Constitution creating a unified court system:

Section 3 of the Article gives the Supreme Court the power to promulgate rules of procedure, including appellate procedure, which will be followed by all of the courts of the State.  That court is also given power to regulate admission to the practice of law, and to handle discipline and disbarment of lawyers.  The Supreme Court currently has these powers under the present Constitution and statutes.

Report of the N.D. Legislative Council to the 43rd Legislative Assembly
, 77 (1973).  The resolution was considered during the 1973 Legislative Assembly as Senate Concurrent Resolution 4003, but was postponed.  In 1975, the proposal was considered as House Concurrent Resolution 3056, and the Legislative Assembly adopted the resolution. 1975 N.D. Sess. Laws ch. 615.  The voters approved the provision in 1976.  1977 N.D. Sess. Laws ch. 599.  The resolution became Article VI, Section 3 of the North Dakota Constitution. 

[¶9] The history indicates that the motivation of the Interim Comm. on Judiciary “A” to include “unless otherwise provided by law” was to clarify that attorneys were not immune from criminal liability for conduct which could also subject them to discipline or disbarment by this Court.  The Legislative Assembly has also recognized this Court has the authority to admit attorneys to the Bar of North Dakota.  
See
 N.D.C.C. § 27-11-02; 
Lashkowitz v. Disciplinary Bd.
, 410 N.W.2d 502, 504 (N.D. 1987) (“N.D.C.C. § 27-11-02 authorizes us to admit persons to practice as attorneys in this state. . . .  Pursuant to our authority, we have adopted rules for admission to practice, rules of professional responsibility, and rules of disciplinary procedure.”)  
See
 
generally
 N.D.C.C. ch. 27-11 (governing admission to the North Dakota Bar).  In addition to both constitutional and statutory authority, we have long recognized our inherent authority over attorneys in this state.  
See, e.g.,
 
In re Simpson
, 9 N.D. 379, 83 N.W. 541, 553 (1900) (holding that “[a]ny court having the right to admit attorneys to practice, and in this state that power is vested in this court, has the inherent right in the exercise of a sound judicial discretion, to exclude them from practice,” and “this inherent power in the judiciary cannot be defeated by the legislative or executive departments”); N.D. Const. art. XI, § 26 (“The legislative, executive, and judicial branches are co-equal branches of government.”).  This power has also been generally recognized in other jurisdictions:  

Under most constitutions, the sounder and better supported doctrine seems to be that, in the exercise of its police power, in the interest and for the protection of the general public, a legislature may, with entire validity, reasonably regulate admissions to the bar, but that any statutory provision which, as put into effect, involves interference with, or frustration of, the courts in the performance of their duties and functions cannot be regarded as valid.  Furthermore, the act of admitting attorneys to practice is in most jurisdictions regarded as exclusively for the courts, as is the final determination in regard to the fitness and qualifications of particular persons, and the courts, acting therein, may exercise judicial power to reject an applicant for unfitness, notwithstanding he may have met the terms of existing statutes and under the provisions thereof appears fully entitled to admittance.  

W. W. Allen, Annotation, 
Power of Legislature Respecting Admission to Bar
, 144 A.L.R. 150 (1943; 2009 ed.).  

[¶10] Under the constitutional authority to promulgate rules that govern the admission to practice law in North Dakota, this Court adopted the Admission to Practice Rules.  In 1990, we adopted a rule specifically exempting board records from public disclosure.  Admission to Practice R. 13, 
Comment
.  Admission to Practice R. 13(A) provides that “[a]ll records maintained by the Board regarding applications for admission to practice law, all examination materials, and all proceedings by the Board shall be confidential except as provided by these rules.”  The records exempted are listed as follows: 

1. the name and last address provided of each applicant; 

2. pre-legal colleges attended by each applicant; 

3. law schools attended by each applicant; 

4. whether an applicant is currently admitted to practice under rule for Limited Practice of Law by Law Students (Senior Practice Rule); 

5. names and addresses of persons who have passed the examination and have met all the requirements for admission to practice; 

6. whether an applicant has been admitted with conditions; and 

7. statistical summaries as may be authorized by the Supreme Court.

Admission to Practice R. 13(A).  Under Admission to Practice R. 13, the records Lamb requested are confidential because they do not fall under any exception.  Rule 13, Admission to Practice R., was adopted in 1990 and has been in use now for nineteen years.  In adopting Rule 13, this Court considered N.D. Const. art. XI, § 6 and N.D.C.C. § 44-04-18.  
See
 
Brief of Petitioner
, In the Matter of the North Dakota State Bar Board; No. 900022 (N.D. Sup. Ct., April 18, 1990).  “Where courts of this State have construed [a] statute and such construction is supported by the long acquiescence on the part of the legislative assembly and by the failure of the assembly to amend the law, it will be presumed that such interpretation of the statute is in accordance with legislative intent.”  
City of Bismarck v. Uhden
, 513 N.W.2d 373, 376 (N.D. 1994).  Other jurisdictions have also concluded that the courts can exempt processes regarding admission to the bar from public disclosure.  
See, e.g.
, 
Bester v. Louisiana Supreme Court Committee on Bar Admissions
, 779 So.2d 715, 724 (La. 2001) (holding that the Louisiana Supreme Court has inherent authority to regulate all facets of the practice of law in Louisiana and to exercise that authority by promulgating a bar admissions regulatory scheme that exempts bar records from public disclosure); 
Connecticut Bar Examining Committee v. Freedom of Information Comm’n
, 550 A.2d 633, 636 (Conn. 1988) (pointing out that the courts make the final decision regarding admissions, and because the bar examining committee acts as an arm of the court, the committee can justifiably refuse public disclosure when it is performing “adjudicative” functions); 
Florida Bd. of Bar Examiners Re: Amendments to the Rules of the Supreme Court of Florida Relating to Admissions to the Bar
, 676 So.2d 372 (Fla. 1996) (citation omitted) (providing “‘all court records presently deemed to be confidential by court rule, including the Rules for Admission to the Bar’ shall be confidential and therefore exempt from public access under the constitutional provision”); 
Pasik v. State Bd. of Law Examiners
, 478 N.Y.S.2d 270, 273 (N.Y. App. Div. 1984) (concluding that a bar admission applicant was not entitled to various information concerning his bar examination scores because the process of admission is a judicial function and the legislature did not intend to interfere by enacting the freedom of information law); 
Mrotek v. Nair
, 231 A.2d 95, 96-100 (Conn. Cir. Ct. 1967) (affirming dismissal for a lack of jurisdiction in a case in which an applicant to the bar sought to review bar examining committee records because the superior court had the sole and exclusive power to admit persons to the bar).  
See generally
 
Nixon v. Warner Communications, Inc.
, 435 U.S. 589, 598 (1978) (“It is uncontested, however, that the right to inspect and copy judicial records is not absolute.  Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes.”); 
Dodrill v. Arkansas Democrat Co.
, 590 S.W.2d 840, 844 n.7 (Ark. 1979) (“Application for and administration of the bar examination are not matters of public record.  To preserve the integrity of the admission process these matters of necessity must be closely guarded and uncompromised by public dissemination.”).  
But
 
see
, 
Application of Peterson
, 459 P.2d 703, 709 (Alaska 1969) (holding that, under procedural due process, an applicant should have been given access to his examination questions, answers, and the model answers, as well as a representative sampling of papers of other applicants who received passing and failing grades).  

[¶11] Further, Lamb argues the information he seeks does not fall under N.D.C.C. § 44-04-18.8.  Under N.D.C.C. § 44-04-18.8, the following records are exempt from N.D.C.C. § 44-04-18, and N.D. Const. art. XI:

[E]xamination or testing questions, scoring keys, and other data used to administer any licensing, employment, academic, or certification examination or test, if the examination or test is to be used again in whole or in part; and records establishing examination or test procedures and instructions regarding the administration, grading, or evaluation of any examination or test, if disclosure may affect scoring outcomes.  

We have concluded that Admission to Practice R. 13 controls the records sought in this case.  We note that Admission to Practice R. 13 is not inconsistent with the approach taken by the legislature under N.D.C.C. § 44-04-18.8.

  

IV

[¶12] We have considered the remaining arguments raised by Lamb and determine them to be unnecessary to our decision or without merit.  We affirm the orders of the court, concluding the district court did not abuse its discretion in denying Lamb’s application for a writ of mandamus and his motion to reconsider because Lamb does not have a clear legal right to the requested information.   

[¶13] Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.