2010 ND 141

Susan K. THORNTON, fka Susan K. Klose, Plaintiff and Appellee

v.

Richard S. KLOSE, Defendant and Appellant.

No. 20090320.

Supreme Court of North Dakota.

July 13, 2010.

James A. Reisnour, Jamestown, N.D., for plaintiff and appellee; submitted on brief.

Cynthia Gay Schaar, Special Assistant Attorney General, Child Support Enforcement Unit, Jamestown, N.D., submitted on brief.

Joseph F. Larson II, Jamestown, N.D., for defendant and appellant; submitted on brief.

VANDE WALLE, Chief Justice.

[¶ 1] Richard Klose appealed from a temporary child support order amending the terms of a prior divorce judgment. We reverse the order and remand for recalculation of child support, concluding that the district court erred in applying the offset provision of N.D. Admin. Code § 75–02–04.1–08.2 when determining child support in this case.

I

[¶ 2] Richard Klose and Susan Thornton were divorced in 2005. The parties entered into a stipulation resolving child custody and support issues involving their minor child. Their agreement was incorporated into the divorce judgment.

[¶ 3] The judgment provided for joint legal custody and shared physical custody, and set out a complex schedule for sharing custody. During the school year, the judgment required:

The parties shall share the physical custody of the minor child on a two week rotation during the school year as follows:

a. During week one, [Klose] has physical custody of the minor child during the week except [Thornton] has physical custody of the minor child from 8:00 a.m. Thursday morning until 6:00 p.m. Sunday evening.

b. During week two, [Klose] has physical custody of the minor child during the week except [Thornton] has physical custody of the minor child from 8:00 a.m. Thursday morning until 10:00 a.m. Saturday morning.

c. After completion of the two week rotation, the rotation starts over again.

The judgment provided for a variation of the rotation schedule during the summer months, giving Thornton extra time during the first week of June, July, and August. The ultimate effect of this variation is that Klose and Thornton were each awarded custody for 42 of the 84 days in the twelve-week summer period. The judgment also made provisions for certain "special days" and holidays, resulting in an essentially equal split in custody for those days. The judgment further provided that "[t]he custody schedule ... is subject to modification upon mutual agreement between the parents." In addition, the section of the judgment calculating child support provides:

For purposes of calculating child support, the parties are each considered to have equal physical custody of the minor child.

[¶ 4] The judgment determined that Thornton had net monthly income of

$1,888, resulting in a child support obligation of $394, and Klose had net monthly income of $1,489, resulting in a child support obligation of $330. Applying the offset provision of N.D. Admin. Code § 75–02–04.1–08.2, Thornton was ordered to pay $64 in monthly child support.

[¶ 5] In 2009, the Regional Child Support Enforcement Unit brought a motion to amend the judgment to modify child support. Klose and Thornton responded, and Klose filed a motion for summary judgment arguing that the award of physical custody under the judgment was not equal and therefore the offset provision in N.D. Admin. Code § 75–02–04.1–08.2 did not apply. Following a hearing, the district court determined the offset provision applied and denied Klose's motion for summary judgment. Based upon the parties' updated financial information, the court determined that Thornton had a child support obligation of $394 and Klose had a child support obligation of $362. Applying the offset provision, the court ordered Thornton to pay $32 per month child support. The court's written order is captioned "Temporary Child Support Order," and provides:

> A Temporary Order of support shall be entered in the above entitled matter for a period of one year. If the parties do not request a review of support at that time, a second amended judgment shall be entered containing the terms and conditions set forth in this Order.

[¶ 6] Klose has appealed, arguing the district court erred in applying the offset provision.

## II

[¶ 7] Before we consider the merits of an appeal, we must determine whether we have jurisdiction. *Brummund v. Brummund*, 2008 ND 224, ¶ 4, 758 N.W.2d 735; *Buchholz v. Barnes County Water Bd.*, 2008 ND 158, ¶ 5, 755 N.W.2d 472. The right to appeal is a jurisdictional matter which this Court will consider sua sponte. *Brummund*, at ¶ 4; *Buchholz*, at ¶ 5. The right to appeal is governed solely by statute and, even if the parties do not raise the issue of appealability, we must take notice of the lack of jurisdiction and dismiss an appeal if there is no statutory basis for the appeal. *Brummund*, at ¶ 4; *Buchholz*, at ¶ 5; *City of Grand Forks v. Riemers*, 2008 ND 153, ¶ 5, 755 N.W.2d 99.

[¶ 8] Klose has appealed from a temporary child support order setting the parties' child support obligations for a period of one year. Section 14–05–25, N.D.C.C., provides that "all orders and decrees touching the alimony and maintenance of either party to a marriage and for the custody, education, and support of the children are subject to revision on appeal in all particulars." That statutory provision "has been construed as authorizing an appeal from a temporary support order." *Mahoney v. Mahoney*, 516 N.W.2d 656, 660 (N.D.Ct.App.1994); *see Keller v. Keller*, 158 N.W.2d 694, 696–97 (N.D.1968); *Albrecht v. Albrecht*, 99 N.W.2d 229, 236–37 (N.D.1959) (on petition for rehearing). In addition, N.D.C.C. § 28–27–02(5) authorizes an appeal from "[a]n order which involves the merits of an action or some part thereof." A temporary child support order effectively amending the prior divorce judgment and setting the parties' child support obligations for a period of one year is an order "for the ... support of the children" and "involves the merits of an action." We therefore conclude the temporary child support order was appealable and we have jurisdiction.

## III

[¶ 9] The sole issue raised by Klose on appeal is whether the district court erred in applying the offset provision of N.D. Admin. Code § 75–02–04.1–08.2 when calculating child support in this case.

[¶ 10] Child support determinations may involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and, in some limited areas, matters of discretion subject to the abuse of discretion standard of review. *E.g., Heinle v. Heinle,* 2010 ND 5, ¶ 36, 777 N.W.2d 590; *State ex rel. K.B. v. Bauer,* 2009 ND 45, ¶ 8, 763 N.W.2d 462. The district court errs as a matter of law if it fails to comply with the child support guidelines in determining an obligor's child support obligation. *Heinle,* at ¶ 36; *Bauer,* at ¶ 8; *Serr v. Serr,* 2008 ND 56, ¶ 18, 746 N.W.2d 416 [*"Serr I "*]. The interpretation and proper application of the provisions of the child support guidelines are questions of law, fully reviewable on appeal, and the failure to properly apply the guidelines to the facts is an error of law. *Heinle,* at ¶ 36; *Bauer,* at ¶ 8. In addition, the interpretation of the divorce judgment is a question of law, fully reviewable on appeal. *Serr I,* at ¶ 18; *Boumont v. Boumont,* 2005 ND 20, ¶ 5, 691 N.W.2d 278.

[¶ 11] The child support guidelines allow an offset of the parties' respective child support obligations in cases where the parents have been awarded "equal physical custody" of the child:

A child support obligation must be determined as described in this section in all cases in which a court orders each parent to have equal physical custody of their child or children. *Equal physical custody means each parent has physical custody of the child,* or if there are multiple children, all of the children, *exactly fifty percent of the time.* A child support obligation for each parent must be calculated under this chapter assuming the other parent is the custodial parent of the child or children subject to the equal physical custody order. The lesser obligation is then subtracted from the greater. The difference is the child support amount owed by the parent with the greater obligation.

N.D. Admin. Code § 75–02–04.1–08.2 (emphasis added).

[¶ 12] This Court has clarified the application of this offset provision in a series of cases. In *Boumont,* we addressed whether the language of the judgment or the parties' actual practice determined if there was an exactly equal fifty-fifty custody split triggering application of N.D. Admin. Code § 75–02–04.1–08.2. The custody provision in the parties' divorce judgment stated:

*CUSTODY:* That each of the parties are granted joint legal and joint physical custody of the children. The children shall be in the physical custody of each parent one-half of the time. It is not possible to give [a] specific schedule of time the children are with each parent because of both parents' work schedules which are subject to wide fluctuations.

*Boumont,* 2005 ND 20, ¶ 5, 691 N.W.2d 278. The mother subsequently moved to amend the divorce judgment to increase the father's child support obligation, arguing that in actual practice she had the children in her physical custody more than fifty percent of the time and therefore the offset provision should not apply. She argued that the district court should engage in a factual analysis of the parties' actual

exercise of custody to determine whether the offset provision applied. The father contended that the language in the judgment setting the exercise of custody controlled over the parties' actual practice and therefore the offset provision should apply.

[¶ 13] We concluded the guidelines require that the court look to the language in the divorce judgment setting out the custodial arrangement, not the parties' actual practice, to determine whether the court has ordered "equal physical custody" triggering application of the offset provision of N.D. Admin. Code § 75–02–04.1–08.2. *Boumont*, 2005 ND 20, ¶ 9, 691 N.W.2d 278. Because the custody provision in the divorce judgment ordered each parent to have "physical custody . . . one-half of the time" without setting a specific custody schedule, we concluded the child support obligation "must be determined according to the offset procedure outlined in N.D. Admin. Code § 75–02–04.1–08.2." *Boumont*, at ¶¶ 5, 9.

[¶ 14] In *Serr I*, we addressed a situation where the district court purported to create equal physical custody, but the terms of the judgment setting the custody schedule resulted in something other than an exact fifty-fifty split. The parties in *Serr I* had entered into a stipulation for shared physical custody, with the father having custody Sunday through Thursday and the mother having custody Thursday through Sunday. *See Serr I*, 2008 ND 56, ¶ 9, 746 N.W.2d 416. The court's findings of fact indicated that the parties had intended "to achieve an equal division of the custody of the minor child" and that "[i]t is in the best interests of the minor child . . . to spend equal time with Plaintiff and Defendant consistent with their agreement of the same." *Id.* at ¶ 10. The judgment included express provisions awarding cus-

tody to the father from 5:00 p.m. Sunday to 5:00 p.m. Thursday, with the mother having custody from 5:00 p.m. Thursday to 5:00 p.m. Sunday, with the parties to "alternate the weekends depending upon the [mother's] work schedule." *Id.* at ¶ 11. The district court then applied the offset provision in N.D. Admin. Code § 75–02–04.1–08.2 to calculate child support.

[¶ 15] On appeal, we noted:

While the district court's underlying amended findings of fact, conclusions of law, and order for judgment suggest an "equal" division of custody, a plain reading of the August 2007 divorce judgment clearly sets out a joint custodial arrangement that is not exactly equal.

*Serr I*, 2008 ND 56, ¶ 12, 746 N.W.2d 416. We therefore concluded that the district court erred in applying N.D. Admin. Code § 75–02–04.1–08.2:

The divorce judgment on its face does not award each parent physical custody of the child "exactly fifty percent of the time," but instead awards more physical custody time to Cody Serr. Because the district court judgment does not award "equal physical custody," we conclude the district court erred in applying N.D. Admin. Code § 75–02–04.1–08.2 to determine the parties' child support obligations.

*Serr I*, at ¶ 22.

[¶ 16] On remand following *Serr I*, the district court noted that the parties intended "to achieve spending an equal amount of time with the child to the extent of their human ability," *Serr v. Serr*, 2008 ND 229, ¶ 7, 758 N.W.2d 739 ["*Serr II* "], and the court amended the judgment to provide:

That the parties have attempted to achieve this equal custody division of the

minor child with [Amanda Serr] having custody of the minor child from Thursday afternoon through Sunday afternoon and [Cody Serr] having custody of the minor child the remaining period of time.

*Id.* The court did not amend the provisions in the judgment setting out the actual custody schedule, which awarded the father custody more than fifty percent of the time, but again applied the offset provision of N.D. Admin. Code § 75–02–04.1–08.2 to calculate child support. *See Serr II,* at ¶ 7.

[¶ 17] We again reversed, stressing that it is the specific language of the judgment setting forth an enforceable custody schedule that controls the determination whether the court has ordered "equal physical custody":

> For the offset procedure in N.D. Admin. Code § 75–02–04.1–08.2 to apply, the actual judgment awarding custody must give each parent "equal physical custody" of the child "exactly fifty percent of the time." *Boumont,* at ¶¶ 9–10. The actual language of the judgment establishes whether there is equal physical custody. *Id.* . . .
>
> Here, despite the district court's statement on remand that the parties intended to "spend[ ] an equal amount of time with the child to the extent of their human ability," the actual language of the judgment does not give the parties equal physical custody as contemplated by the language of N.D. Admin. Code § 75–02–04.1–08.2. Rather, the specific language of the judgment entered after remand grants Amanda Serr custody three days per week from Thursday afternoon through Sunday afternoon and grants Cody Serr custody for the remaining period of time, with an equal split of holidays and a preference for the

other parent to provide daycare whenever needed. Our prior decision in this case authorized the district court to adjust the ordered custody to be "equal physical custody" under the guidelines, *see Serr,* 2008 ND 56, ¶ 16, 746 N.W.2d 416, but the actual language in the judgment did not alter the parties' custodial arrangement. Under the actual language in the judgment entered after remand, we conclude the court erred in applying the "equal physical custody" provision for establishing the parties' child support obligations.

*Serr II,* 2008 ND 229, ¶¶ 12–13, 758 N.W.2d 739.

[¶ 18] It is against this backdrop that we consider application of the offset provision in this case. The divorce judgment here sets out a complex schedule for shared physical custody of the parties' minor child which explicitly results in an unequal division of custody. Although the summer schedule, special days, and holidays are equally split, in each two-week period during the school year Klose has custody for 204 hours, or 8.5 days, while Thornton has custody for 132 hours, or 5.5 days. As a result, under the express terms of the judgment, Klose will have physical custody approximately 60 days more than Thornton each year. This is not custody "exactly fifty percent of the time" as explicitly required for "equal physical custody" under N.D. Admin. Code § 75–02–04.1–08.2.

[¶ 19] Thornton argues that, despite the specific language setting the custody schedule, the judgment creates equal physical custody because it allows the parties to modify the custodial arrangement by mutual agreement and because it expressly provides that, "[f]or purposes of calculating child support, the parties are each

considered to have equal physical custody of the minor child." She contends that, under *Boumont,* this language of the judgment must control the determination whether there is equal physical custody under N.D. Admin. Code § 75–02–04.1–08.2. Thornton reads *Boumont* too broadly. In *Boumont,* 2005 ND 20, ¶ 5, 691 N.W.2d 278, the judgment language setting custody said only that the children would "be in the physical custody of each parent one-half of the time" and stated it was impossible to set a specific custody schedule. The district court therefore declined to set out *any* schedule for the parties and left it to the parties to provide the details of the custodial arrangement which would result in each parent having custody "one-half of the time." This provision created an enforceable equal physical custody arrangement and satisfied the requirements of N.D. Admin. Code § 75–02–04.1–08.2.

[¶ 20] *Serr I* and *Serr II,* however, make it clear that the parties and the district court are not free to skirt the requirements of the guidelines by expressing an intent to create equal physical custody while simultaneously ordering an express custody schedule which results in an unequal division of custody. *Serr I* and *Serr II* stressed that judgment provisions ordering a specific custody schedule control the determination whether there is an equal (i.e., fifty-fifty) division of custody, regardless of additional language indicating the parties and the district court intended to apply the offset provision by labeling the custody arrangement as "equal." If the divorce judgment "on its face does not award each parent physical custody of the child 'exactly fifty percent of the time,' but instead awards more physical custody time" to one parent, it does not award equal physical custody. *Serr I,* 2008 ND 56, ¶ 22, 746 N.W.2d 416.

[¶ 21] Thornton in effect argues that the amorphous provision in the judgment allowing the parties to agree to some other custody arrangement and the inclusion of the magic words "equal physical custody" in the paragraph setting child support somehow trump the express judgment provisions ordering a clearly unequal custody schedule. If we were to accept Thornton's arguments, parties could agree to a custody schedule resulting in a clearly unequal split of custodial time, but avoid payment of the appropriate amount of child support under the guidelines by merely including language stating that the parties may mutually agree to change the custody schedule or that the arrangement is to be "considered" equal physical custody "for purposes of calculating child support." This result would invite the parties and the district court to create a mere illusion of equal physical custody to allow them to avoid an award of the full and proper amount of child support under the guidelines.

[¶ 22] We do not condone the use of such legal fictions to circumvent the child's right to the appropriate amount of support under the guidelines. We recognized in *Boumont* that "the purpose behind N.D. Admin. Code § 75–02–04.1–08.2 . . . was to 'address situations in which people were using equal physical custody to avoid the payment of child support.'" *Boumont,* 2005 ND 20, ¶ 13, 691 N.W.2d 278 (quoting Summary to Comments Received in Regard to Proposed Amendments to N.D. Admin. Code ch. 75–02–04.1 Child Support Guidelines, p. 16 (June 16, 2003)). There is a "strong public policy against divorce settlements that bargain away child support," based upon "the fact that the right to support belongs to the *child,* and the custodial parent has only a representational right to collect support on behalf of the

child." *Sullivan v. Quist,* 506 N.W.2d 394, 397 (N.D.1993).

[¶ 23] We conclude that, under our prior caselaw, an explicit judgment provision ordering a custody schedule which results in an unequal division of custodial time controls the determination whether there is equal physical custody triggering application of the offset provision of N.D. Admin. Code § 75–02–04.1–08.2. Judgment provisions allowing the parties to mutually agree to a different custodial schedule or declaring that "[f]or purposes of calculating child support, the parties are each considered to have equal physical custody of the minor child" do not trump the expressly ordered custody schedule or convert the unequal division of custody into "equal physical custody" under N.D. Admin. Code § 75–02–04.1–08.2. This divorce judgment "on its face" does not award each parent physical custody of the child "exactly fifty percent of the time," but instead awarded more physical custody time to Klose. *See Serr I,* 2008 ND 56, ¶ 22, 746 N.W.2d 416. We therefore conclude the district court erred in applying the offset provision of N.D. Admin. Code § 75–02–04.1–08.2 when calculating child support in this case.

## IV

[¶ 24] We reverse the temporary child support order and remand for recalculation of child support under a proper application of the child support guidelines.

[¶ 25] ROBERT O. WEFALD, D.J., CAROL RONNING KAPSNER, and DANIEL J. CROTHERS, JJ., concur.

[¶ 26] The Honorable ROBERT O. WEFALD, D.J., sitting in place of SANDSTROM, J., disqualified.

MARING, Justice, concurring.

[¶ 27] I concur in the majority opinion. I do not disagree with the majority's interpretation of N.D. Admin. Code § 75–02–04.1–08.2 or our prior case law interpreting it. I write to express frustration with the definition of "equal physical custody" in this guideline. *See* N.D. Admin. Code § 75–02–04.1–08.2. "Equal physical custody means each parent has physical custody of the child, ... *exactly fifty percent of the time.*" *Id.* (emphasis added).

[¶ 28] Our Court interpreted this definition in *Serr I* and *Serr II* and concluded that a custody arrangement whereby one parent has custody "three days per week from Thursday afternoon through Sunday afternoon" and "grants [the other parent] custody for the remaining period of time, with an equal split of holidays and a preference for the other parent to provide daycare whenever needed," does not grant the parties "equal physical custody," as contemplated by the definition in N.D. Admin. Code § 75–02–04.1–08.2. *Serr v. Serr,* 2008 ND 229, ¶ 13, 758 N.W.2d 739. Clearly, under this language one parent received custody four days and the other parent received custody three days out of the seven-day week. *Id.*

[¶ 29] In *Boumont v. Boumont,* this Court concluded that the custody provision in the judgment which simply assigned each parent physical custody of the child "one-half of the time" met the definition of "equal physical custody" for the purposes of the application of N.D. Admin. Code § 75–02–04.1–08.2. 2005 ND 20, ¶ 9, 691 N.W.2d 278. Our Court made it clear, the language of the judgment and not the reality of custody controlled whether the guideline applied. *Id.*

[¶ 30] In the present case, we construe a provision for custody that states the

parents are "shar[ing] the physical custody of the minor children" and then provides that custody will be shared "on a two week rotation during the school year" as follows:

a. During week one, Defendant has physical custody of the minor child during the week except Plaintiff has physical custody of the minor child from 8:00 a.m. Thursday morning until 6:00 p.m. Sunday evening.

b. During week two, Defendant has physical custody of the minor child during the week except Plaintiff has physical custody of the minor child from 8:00 a.m. Thursday morning until 10:00 a.m. Saturday morning.

. . . .

*Summer*

The parties shall share the physical custody of the minor child when school is out on the same schedule as in the school year except that during the first full week of the months of June, July and August, Plaintiff has physical custody of the minor child from 8:00 a.m. Monday morning until 6:00 p.m. Sunday evening. This scheduled time takes the place of a rotation where Plaintiff has custody of the minor child from 8:00 a.m. Thursday morning until 6:00 p.m. Sunday evening.

*Special days*

Plaintiff shall have custody of the minor child on Mother's day and her birthday (8:00 a.m. until 7:30 p.m. each day) and Christmas Eve each year (12 noon on December 24 until 9:00 a.m. December 25). Defendant shall have custody of the minor child on Father's day and his birthday (8:00 a.m. until 7:30 p.m. each day) and Christmas Day each year (9:00 a.m. on December 25 until 8:00 a.m. December 26). Plaintiff will have

the minor child on the minor child's birthday (8:00 a.m. to 8:00 p.m.) in even years and Defendant will have the minor child on this birthday (8:00 a.m. to 8:00 p.m.) during odd years.

*Holidays*

Plaintiff will have the minor child during the following holidays:

| | |
|---|---|
| 4th of July | (With weekend when 4th falls on a Monday or Friday) |
| Thanksgiving | (Thursday at 8:00 a.m. to Saturday at 10:00 a.m.) |
| News Years Eve | (5:00 p.m. New Year's Eve to 8:00 p.m. on New Year's Day) |
| Presidents Day | (3 day weekend) |

Defendant will have the minor child during the following holidays:

| | |
|---|---|
| Labor Day | (3 day weekend) |
| Easter Day | (9:00 a.m. to 8:00 p.m.) |
| Memorial Day | (3 day weekend) |

This holiday schedule begins in 2005 and alternates each succeeding year, so that the parent who has the child for a particular holiday during the year will not have him on such holiday in the following year. Special days and holidays take precedence over the school and summer custody schedules.

If this schedule is analyzed using days and half-days, Susan Thornton has the child approximately 184 days a year, which is more than fifty percent of 365 days. However, if the schedule is analyzed by hours, Susan Thornton's physical custody of the minor child falls short of fifty percent of the time. When the parties' custody arrangement is laid out on a calendar, it is easy to see that Richard Klose would have the child Monday, Tuesday, and Wednesday, and Susan Thornton would have the child Thursday, Friday, Saturday, and Sunday, except every other weekend Richard Klose would have custody approximately one-half of Saturday and all of Sunday. It appears reasonable that Richard Klose would want and should have the

child on some weekends as a working parent. It can be inferred that in exchange for giving up these weekends, Susan Thornton was granted week-long custody of the child the first full week of June, July, and August every year.

[¶ 31] My concern is that we now have taken the next step and are involved in counting the number of hours the judgment allocates to each parent to determine whether N.D. Admin. Code § 75–02–04.1–08.2 applies. This, I fear, will result in family law practitioners advising their clients only to stipulate simply "to exactly fifty percent of the time" for each parent to have physical custody in order to avoid an interpretation of a specific schedule as not to be "exactly fifty percent of the time." In my opinion, this is a regression back to the days of agreements for "reasonable visitation," which inevitably resulted in subsequent litigation. Future stipulations and judgments which merely recite physical custody shall be shared "exactly fifty percent of the time" can conceivably result in side agreements between the parents, which may or may not be enforceable and even more litigation.

[¶ 32] However, it appears that these concerns may be unfounded, because N.D.C.C. § 14–09–30(2), effective on August 1, 2009, appears to require a "parenting plan," which must include, at a minimum, a provision setting out a parenting schedule, including under (d):

(1) Holidays and days off from school, birthday, and vacation planning;

(2) Weekends and weekdays; and

(3) Summers;

Under N.D.C.C. § 14–09–30(2), if the parties do not include such provisions, they must provide the court with an explanation as to why a provision is not included. This language in N.D.C.C. § 14–09–30(2) may give parties, who wish to stipulate to share physical custody or "residential responsibility" exactly fifty percent of the time, a way to do just that in their stipulation. Whether an explanation that setting out a schedule that provides "exactly fifty percent of the time" down to the hour is too difficult or onerous will satisfy a trial court, is left to future litigation.

[¶ 33] The child support guideline, N.D. Admin. Code § 75–02–04.1–08.2, seems to provide an impediment to all the progress made by recent statutory changes toward amicable resolution of custody disputes. Custody has always been an area that the courts want parties to settle and agree upon. I am of the opinion that it would serve families better if the guideline at issue measured time in days or nights and defined day and night. *See, e.g.,* N.D. Admin. Code § 75–02–04.1–08.1(1) ("For purposes of this section, 'extended visitation' means visitation between an obligor and a child living with an obligee scheduled . . . to exceed sixty of ninety consecutive *nights* or an annual total of one hundred sixty-four *nights*.") (emphasis added).

[¶ 34] The "bright line" created by the child support guideline at issue does not take into consideration its impact on the resolution of custody arrangements between parties. It also ignores reality. What do the parties, who are attempting to meet "exactly fifty percent of the time," do with holidays and birthdays when they land on the other parent's day or weekend with the child? Do the parents need to provide in the stipulation and judgment year by year how to readjust the schedules to make certain the other parent receives lost hours? This is only one small example of the difficulty with complying with this

guideline. I sincerely hope the drafters of the child support guidelines consider the impact the guideline at issue has on the settlement of custody disputes and the interrelationship between payment of child support and custody in this context.

[¶ 35] I respectfully concur.

[¶ 36] MARY MUEHLEN MARING